# United States Court of Appeals
# for the Third Circuit

THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY
UNDERWRITERS and THE INSTITUTES, LLC

*Plaintiffs/Counterclaim Defendants-Appellants*

v.

SYDNEY POSNER and CLAIMS XCHANGE,

*Defendants/Counterclaim Plaintiffs-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA, THE HONORABLE NITZA QUIÑONES ALEJANDRO
DISTRICT COURT NO. 2:19-CV-05369-NIQA

## PRINCIPAL BRIEF OF
## PLAINTIFFS/COUNTERCLAIM DEFENDANTS-APPELLANTS

D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325696)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
 (215) 988-2700 (telephone)
 (215) 988-2757 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

*Attorneys for Plaintiffs/Counterclaim Defendants-
Appellants The American Institute for Chartered
Property Casualty Underwriters and The Institutes, LLC*

# CORPORATE DISCLOSURE STATEMENT

Plaintiff/Counterclaim Defendant-Appellant The American Institute for Chartered Property Casualty Underwriters is a Pennsylvania non-profit corporation that does not have a parent company, and no public company holds more than 10% of its stock.

Plaintiff/Counterclaim Defendant-Appellant The Institutes, LLC is a Pennsylvania limited liability company; the American Institute for Chartered Property Casualty Underwriters is its sole member and also a party to this appeal. Together, they are "The Institutes."

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................................................1

STATEMENT OF THE ISSUES.......................................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................2

STATEMENT OF THE CASE............................................................................................3

    I.    FACTUAL BACKGROUND.............................................................................3

        A.    The Founding of CLM. ...................................................................3

        B.    The Institutes Acquires CLM. ........................................................5

        C.    Posner Solicits and Receives a Finder's Fee for Referring
            Business to Another Company Founded by Her Brother. ....................7

    II.    PROCEDURAL HISTORY ..............................................................................11

        A.    Pretrial Proceedings........................................................................11

            i.    The Pleadings. ....................................................................11

            ii.    Discovery............................................................................13

            iii.    Motion for Summary Judgment.........................................14

            iv.    Motions *in Limine*............................................................15

        B.    Trial. ...............................................................................................16

            i.    Defenses Raised..................................................................17

            ii.    Evidence of Counterclaims.................................................19

            iii.    The Charge. ........................................................................21

            iv.    The Verdict. ........................................................................21

        C.    Post-Trial Proceedings. ..................................................................22

            i.    Renewed Motion for Judgment as a Matter of Law...................22

            ii.    Motion for a Permanent Injunction. ..................................23

SUMMARY OF ARGUMENT .......................................................................................23

ARGUMENT .....................................................................................................................25

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT
        REJECTED THE REQUEST FOR A PERMANENT
        INJUNCTION. ................................................................................................25

        A.    Scope and Standard of Review........................................................25

B. The District Court Erred in Precluding Injunctive Relief Merely Because the Jury Entered an Award on the Verdict...........................25

C. The District Court Erred in its Evaluation of the Jury's Award. ........28

D. A Permanent Injunction Was Needed to Right Posner's Wrong..........30

II. THE AMENDED COMPLAINT ADEQUATELY PLEADED— AND THE FACTS ADDUCED AT TRIAL ESTABLISHED—THE COMMON LAW CAUSE OF ACTION OF UNFAIR COMPETITION, AND THE DISTRICT COURT ERRED IN DISMISSING IT. ...................................................................................33

A. Scope and Standard of Review...........................................................33

B. The District Court Failed to Examine Pennsylvania Law on Unfair Competition...........................................................................34

III. THE DISTRICT COURT DID NOT PROVIDE THE JURY WITH THE PROPER GUIDANCE HOW TO REMEDY DEFENDANTS' MANIPULATION OF THE CONFIDENTIAL AND TRADE SECRET INFORMATION AT ISSUE IN THE CASE............................40

A. Scope and Standard of Review...........................................................40

B. The Entire Litigation Was Tainted by Defendants' Discovery Abuses. ..............................................................................41

IV. THE JUDGMENT ON THE COUNTERCLAIM CANNOT STAND. ......................................................................................................47

A. Scope and Standard of Review...........................................................48

B. The District Court Erred by Permitting Posner to Use a Never-Before-Presented Damages Calculation with the Jury........................48

C. No Evidence Supports the Jury's Verdict on the Counterclaims........49

D. Even if There Were Proof, a New Trial Would Be Warranted...........54

CONCLUSION ...............................................................................................56

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  166 F.3d 197 (3d Cir. 1999) ...................................................................................39

*American Clay Mfg. Co. v. American Clay Mfg. Co. of N.J.*,
  47 A. 936 (Pa. 1901) ............................................................................................37

*Ayoub v. Spencer*,
  550 F.2d 164 (3d Cir. 1977) ................................................................................56

*Blackwell-Murray v. PNC Bank*,
  963 F. Supp. 2d 448 (E.D. Pa. 2013) ..................................................................49

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*,
  247 F.3d 79 (3d Cir. 2001) ..................................................................................47

*Braun v. Wal-mart Stores, Inc.*,
  24 A.3d 875 (Pa Super. 2011) .............................................................................47

*Buffalo Twp. v. Jones*,
  813 A.2d 659 (Pa. 2002) ......................................................................................27

*Bull v. United Parcel Serv., Inc.*,
  665 F.3d 68 (3d Cir. 2012) ..................................................................................41

*Capogrosso v. 30 River Ct. E. Urban Renewal Co.*,
  482 F. App'x 677 (3d Cir. 2012) .........................................................................45

*Carl A. Colteryahn Dairy, Inc, v. Schneider Dairy*,
  203 A.2d 469 (Pa. 1964)................................................................................. 37-38

*Carlson v. Qualtek Wireless LLC*,
  2023 WL 5094566 (3d Cir. Aug. 9, 2003) ..........................................................47

*Checker Cab Phila., Inc. v. Uber Techs., Inc.*,
  689 F. App'x 707 (3d Cir. 2017)..........................................................................40

*Clientron, Corp. v. Devon IT, Inc.*,
  894 F.3d 568 (3d Cir. 2018) ...........................................................................41, 46

*Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.*,
    360 A.2d 200 (Pa. 1976) ...................................................................38

*Commonwealth v. UMPC*,
    208 A.3d 898 (Pa. 2019) .................................................................49

*Consol. Home Specialties Co. v. Plotkin*,
    55 A.2d 404 (Pa. 1947) ...................................................................37

*CSX Trans., Inc. v. Hensley*,
    556 U.S. 838 (2009) ........................................................................29

*Curley v. Klem*,
    499 F.3d 199 (3d Cir. 2007) ...........................................................48

*Den-Tal-Ez, Inc. v. Siemens Cap. Corp.*,
    566 A.2d 1214 (Pa. Super. 1989) ...................................................39

*DeVore v. W.C.A.B. (Sun Oil Co.)*,
    645 A.2d 917 (Pa. Cmwlth. 1994) ..................................................52

*Fineman v. Armstrong Indus., Inc.*,
    980 F.2d 171 (3d Cir. 1992) .....................................................50, 54

*GN Netcom, Inc. v. Plantronics, Inc.*,
    930 F.3d 76 (3d Cir. 2019) ....................................................... 40-41

*Grider v. Keystone Health Plan Cent., Inc.*,
    580 F.3d 119 (3d Cir. 2009) ...........................................................41

*HTR Rests., Inc. v. Erie Ins. Exch.*,
    307 A.3d 49 (Pa. 2023) ...................................................................41

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ........................................................................41

*Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co.*,
    70 A. 968 (Pa. 1908) ............................................................... 36-37

*Kenset Corp. v. Ilanjian*,
    600 F. App'x 827 (3d Cir. 2015) .....................................................26

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993) ........................................................................48

*Morgan's Home Equip. Corp. v. Martucci*,
136 A.2d 838 (Pa. 1957) ...........................................................................37

*Oakwood Laboratories LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021) .................................................................32, 33

*Posner v. American Institute for Chartered Property Casualty Underwriters et al.*,
22-cv-01898 (E.D. Pa.) ....................................................2, 10, 13, 17

*Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.*,
192 A.2d 657 (Pa. 1963) ...........................................................................36

*PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*,
47 F.4th 156 (3d Cir. 2022) .......................................................................26

*PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*,
2020 WL 1526940 (W.D. Pa. Mar. 31, 2020) ...........................................27

*Price v. TransUnion, LLC*,
839 F. Supp. 2d 785 (E.D. Pa. 2012) .........................................................56

*Pryer v. C.O. 3 Slavic*,
251 F.3d 448 (3d Cir. 2001) ......................................................................30

*Reed v. Phila., Bethlehem & Ne. R.R. Co.*,
939 F.2d 128 (3d Cir. 1991) ......................................................................51

*Schmid v. Milwaukee Elec. Tool Corp.*,
13 F.3d 76 (3d Cir. 1994) ..........................................................................45

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010) ......................................................................34

*SLT Holdings, LLC v. Mitch-Well Energy, Inc.*,
249 A.3d 888 (Pa. 2021) ............................................................................27

*T.D. Bank N.A. v. Hill*,
928 F.3d 259 (3d Cir. 2019) .................................................................25, 27

*Tincher v. Omega Flex, Inc.*,
104 A.3d 328 (Pa. 2014)................................................................40

*United States v. $8,221,877.16*,
330 F.3d 141 (3d Cir. 2003) ..........................................................41

*United States v. Navarro*,
145 F.3d 580 (3d Cir. 1998) ..........................................................54

*United States v. Weatherly*,
525 F.3d 265 (3d Cir. 2008) ..........................................................54

*W. Phila. Achievement Charter Elem. Sch. v. Sch. Dist. of Phila.*,
132 A.3d 957 (Pa. 2016)................................................................27

*Ware v. Rodale Press, Inc.*,
322 F.3d 218 (3d Cir. 2003) ....................................................42, 48

**Statutes, Rules & Regulations**

18 U.S.C. § 1836(b) ...................................................................1, 32

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

28 U.S.C. § 1332 .............................................................................1

28 U.S.C. § 1367 .............................................................................1

Fed. R. Civ. P. 37 ...................................................................*passim*

Fed. R. Evid. 401 ..........................................................................42

Fed. R. Evid. 403 ..........................................................................42

L.R. 16.1(c)(3) ..............................................................................15

Pa.R.Civ.P. 4019(c)(1)-(5)............................................................46

**Other Authorities**

Restatement (Third) of Unfair Competition § 1 ...................35, 38

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and § 1367, as well as 18 U.S.C. § 1836(b).  After a jury trial, the district court entered judgment, and then following post-trial briefing, a modified final judgment on December 15, 2023.  App.6286; App.21.  Appellants filed the notice of appeal on December 21, 2023.  App.22-App.23.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Did the district court misapprehend the analysis for permanent injunctive relief?

    *Suggested answer*:  Yes, and its error was compounded by its disregard of the full jury findings.

    In accordance with LAR 28.1(a)(1):

    *These issues were raised at* App.6287-App.6324 *and ruled on at* App.19-App.20.

2.   Does Pennsylvania award relief for claims of unfair competition?

    *Suggested answer*:  Yes, and the district court erred in dismissing the claim on the basis that Pennsylvania does not.

    In accordance with LAR 28.1(a)(1):

    *These issues were raised at* App.2158-App.2175 *and ruled on at* App.1-App.2.

1

3. Did the district court err in its construction of Federal Rule of Civil Procedure 37?

Suggested answer: Yes.

In accordance with LAR 28.1(a)(1):

*These issues were raised at* App.5925-App.5926; App.6226-App.6258 *and ruled on at* App.5; App.8989-App.8990.

4. Did the district court err in allowing a counterclaim amount go to the jury?

*Suggested answer*: Yes, whether viewed substantively or procedurally.

In accordance with LAR 28.1(a)(1):

*These issues were raised at* App.8169-App.8172; App.8246-App.8252; App.8886-App.8887; App.6260-App.6284; App.6366-App.6416 *and ruled on at* App.8252; App.8772-App.8773; App.8886-App.8887; App.6285; App.6; App.18.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

In accordance with LAR 28.1(a)(2), counsel is aware of two related actions:

(1) *Posner v. American Institute for Chartered Property Casualty Underwriters et al.*, 22-cv-01898 (E.D. Pa.) (Quiñones Alejandro, J.) (the "Discrimination Action"); and (2) *American Institute for Chartered Property Casualty Underwriters et al. v. Potter et al.*, Nos. 22-2967, 22-3025, and 22-3042 (3d Cir.).

**I.     FACTUAL BACKGROUND**

The American Institute for Chartered Property Casualty Underwriters ("AICPCU"), is a Pennsylvania non-profit and the sole member of The Institutes, LLC (collectively, "The Institutes"). App.3509-App.3510 ¶¶ 3-4. The Institutes provides resources, news, and education and professional designations and certificates for risk management and insurance professionals. The Institutes is the go-to source for professional education and development in the areas of insurance, risk management, underwriting, and claims.[1]

**A.     The Founding of CLM.**

Claims Litigation Management Group, Inc. ("CLM") was founded in 2007 under a different name by Defendant Sydney Posner's brother, non-party Adam Potter, who envisioned connecting claims and risk management professionals with industry providers, such as attorneys. App.8067-App.8071. Attorneys paid to be Members, while claim and risk management professionals joined for free as Fellows. Vendors and other service providers were also Fellows but were required to sponsor events to attend. App.8073-App.8074.

Conceived as a networking and educational organization, CLM held its first "Annual Conference" in 2008, App.8071-App.8072, and opened an office in

---

[1] https://global.theinstitutes.org/history (last accessed 6/1/2024).

Florida, and hired its first employee (other than Posner) in 2009 or 2010, *id.* Around that time, it started hosting regional events. *Id.* By 2017, CLM hosted between twelve and fifteen conferences per year across the country, with focuses on transportation, construction, and workers compensation, drawing 300-400 people to each. App.8080-App.8082.

Critical to its work, CLM developed a detailed database of information on its members, fellows, sponsors, and advertisers as early as 2009. App.7769-App.7771; App.7210-App.7211. It collected members' attendance at conferences and seminars, and other information used to develop programming. App.7210-App.7211. CLM also had a database of sponsors, showing what events and at what levels they sponsored over time, and the discounts they negotiated. *Id.* CLM used this information to market sponsorships and advertising. App.7248-App.7249.

Posner was involved with CLM from its inception. Her role was originally administrative, but she gradually began to help grow membership, plan events, and, by 2012-2013, sell sponsorships for events and conferences. App.8073-App.8074. As a full-time employee selling sponsorships for events and conferences, Posner earned a salary plus an 8 percent commission on her sales. App.8085-App.8086. In February 2018, a member suggested she call herself Chief Relationship Officer, and because she "thought it was perfect," she adopted it as her own. App.8082.

## B. The Institutes Acquires CLM.

Peter Miller, President and CEO of The Institutes, originally explored partnering with CLM, but Mr. Potter offered to sell CLM instead. App.7201-App.7202. On June 1, 2018, The Institutes acquired CLM, related companies, and confidential trade secrets for approximately $22 million, 90 percent of which was attributed to CLM's decade-cultivated database of information. App.1904 ¶¶ 13-14; App.7632-App.7634. Miller explained: "[W]hat we are getting is data and the relationships that the data can represent in the database, in the accumulated data." App.7210.

The Institutes offered to retain several CLM employees, including Posner. She remained an at-will employee in Florida, working remotely, subject to the terms of an amended offer letter (the "Offer Letter"), a confidentiality and non-solicitation agreement, and an employee handbook. App.9139-App.9144; App.9145-App.9146; App.6788-App.6791; App.15530-App.15531. The non-solicitation agreement stated:

> I will not solicit, respond to the solicitation of, or assist others in soliciting employees, former employees, clients, vendors or sponsors of the Company in an attempt to cause them to terminate their employment with the Company, to cease, decline or reduce doing business with the Company, and/or in any way interfere with the Company's existing or prospective business relationships with them.

App.9142. Posner agreed to forgo severance in exchange for not being required to execute a non-competition agreement. App.4065-App.4069.

In addition to her salary, Posner continued to earn an 8 percent commission on her sales. App.15530-App.15531. At Posner's request, The Institutes changed her commissions from three to four times a year. App.8120-App.8121. Posner understood that that sales were earned only *after* an event was held, regardless of whether the sponsorship was paid in full. *See* App.14761-App.14762; App.14766-App.14767; App.14779-App.14782; *see also* App.7494 (Q: "Why wouldn't she get commission until the events took place?" A: "That was the practice at CLM." Q: "Did [Posner] ever object to that practice?" A: "No."); App.16939 ("I don't receive commissions until after the event takes place."); App.16942 ("I get paid commissions 4 times a year for events that took place not for sales that happened in that quarter.").

The Institutes retained the right to make changes to the commission structure at any time and at its sole discretion. App.9131-App.9138. On July 1, 2019, the sales structure changed from product-centered to customer-centered, and the commission structure changed, too. App.7386-App.7387. Under the new policy, commissions would not be paid until the sponsorship sale was paid in full. App.15091.

Since 2012, Posner kept a binder to track expected commissions, and from the time The Institutes acquired CLM, she complained about payments—including on commissions she thought she earned pre-acquisition. App.8634-App.8635.

6

The Institutes provided Posner with reports of anticipated commissions to identify any perceived discrepancies, which—if valid—were reconciled and paid. App.8156-App.8162; App.15494. On July 29, 2019, Posner informed The Institutes she was owed "a few hundred dollars" in commissions. App.15490-App.15491. But by August 7, 2019, she was unsure whether there was any discrepancy *at all*. App.15494-App.15496.

### C. Posner Solicits and Receives a Finder's Fee for Referring Business to Another Company Founded by Her Brother.

In July 2019, CLM's CEO, Anne Blume, heard that Posner had been complaining about her. Posner denied it. App.7305-App.7306. Blume then learned that a CLM sponsor had expressed interest in a program CLM used to sponsor with BIH, a company Mr. Potter sold to Steve Acunto after the CLM sale. App.7306. Posner reached out to her brother for a 10 percent finder's fee if she could bring in two years of sponsoring the BIH event. He agreed. App.15540.

Based on that and other incidents, The Institutes terminated Posner's employment on Friday, September 20, 2019. App.7308-App.7311. The Institutes' arranged to have the company's equipment, including the Dell Laptop and hard drive ("Hard Drive B") picked up on Monday, September 23, 2024. App.6767-App.6768.

As it turns out, Posner had already been consulting a lawyer before she was terminated. *See* App.8452-App.8453; App.15074. And she was planning to use

the fact that she had no non-compete agreement to form an organization to do precisely what CLM did, with CLM's sponsors and members, but on her terms. App.15023, App.15049; App.15074. She effectuated her plan with lightning speed when she was terminated. As examples,

- She immediately set up a second gmail address. App.7793-App.7795.

- The day she was terminated, she sent an email to three lawyers, attaching a list of people who had been invited to an annual tree-lighting event she was coordinating for CLM, identifying who had confirmed attendance and explaining that she did not want to follow up with the others personally "due to issues with my contract at the moment." App.15023-App.15024.

- That same day, she discussed with one of CLM's sponsors creating a competing organization that would "kill" CLM. App.15023-App.15024; App.15049. She told another sponsor that she would be out "[f]or blood." App.15086.

- Her brother recommended speaking with Steve Acunto, BIH's owner, who immediately agreed to serve as the back office of her new company. App.7786-App.7788.

- On Sunday, she purchased a second hard drive ("Hard Drive A") and that evening through the early hours of Monday, September 23, 2019,

transferred The Institutes' documents from a folder on the company laptop to Hard Drive A.  App.4180-App.4184.

- Later that Monday, she accessed additional lists of sponsors, potential sponsors, and a spreadsheet showing discounts.  App.4185.

- She then disconnected Hard Drive B containing approximately 60,000 emails from The Institutes' server. App.7784-App.7785; App.6005.

- She also sent documents to her newly formed gmail account that day. App.14971; App.16830.

- Posner purchased a Lenovo computer to use for her new business and connected Hard Drive B to it.  She also spent significant time that week working on her son's iPad.  App.7801-App.7802.

- On September 25, 2019, she told a sponsor that she was starting her own business because she had "[n]o noncompete and lots of support." App.15074.

- She finally returned the Dell laptop—but not Hard Drive B—on Wednesday, September 26, 2019.  App.4184.

- Posner decided by September 29, 2019 that her new company would host a transportation conference, a construction conference, a boat cruise, and a college world series event—all events that CLM was offering or had offered.  App.4186-App.4187; App.16525-App.16527.

9

She also identified 28 advisors for the new company's Board of Advisors.  App.16526.

- Claims Xchange, Inc. was incorporated on October 1, 2019.  App.16888.

- In texts on October 17, 2019, she told a colleague that she was "[l]aunching a competing organization," that lawsuits were starting, and she expected things to get "ugly."  App.15076.  In another exchange, she told an industry professional that a "competing organization" should be announced soon.  App.15087.

- On October 25, 2019, she filed a complaint with the Florida Human Rights Commission.  *See* Discrimination Action, Dkt. 1-1.

- On November 5, 2019, Posner informed The Institutes she was working with Claims Xchange.  App.15543.

- Reacting to that, The Institutes filed this matter on November 14, 2019.  App.24-App.70.

- Days later, Posner issued a press release, explaining that Claims Xchange, her new company, had 350 members in less than 15 days and a Board of Advisors was being formed (already with a chair and 18 others) and that there was a full agenda of activities across the United States for 2020.  App.16890-App.16896.

## II.    PROCEDURAL HISTORY

### A.    Pretrial Proceedings.

#### i.    The Pleadings.

The November 14, 2019 complaint against Posner and Claims Xchange, Inc. ("Defendants"), sought injunctive, monetary, and declaratory relief for breach of contract, breach of duty of loyalty, unfair competition, tortious interference, aiding and abetting breach of fiduciary duty, conversion, and violations of the Defend Trade Secrets Act ("DTSA").  App.24-App.70.

The Institutes moved for a temporary restraining order and preliminary injunction on November 25, 2019.  App.71-App.73.  The district court issued a temporary restraining order on November 26, 2019.  App.636-App.638.  At the preliminary injunction hearing, Posner testified that her new company, a replica of CLM, was formed on October 1, 2019, but averred that it did not compete with CLM.  App.2085-App.2087.  She also testified that she did not use any confidential information to create her new company, and that she instead relied on her advisory board, LinkedIn, and Mr. Acunto.  App.8228-App.8229.  In reliance on her testimony, the district court dissolved the temporary restraining order and denied the motion for a preliminary injunction. App.1833-App.1834.

On January 16, 2020 (just three days after The Institutes amended its complaint), Posner posted on Google Help to ask whether emails from a deleted account are permanently lost, explaining that she was engaged in litigation with a

former employer.  App.2740.  Later that month, on January 30, 2020, the Lenovo computer she purchased in the days after her termination was allegedly stolen from her locked car, without the car sustaining any damage whatsoever.  App.7832-App.7834.  And in March 2020, her son's iPad, which she used in the first days of her new business, was allegedly left by her son at school and never recovered.  App.7845.

Meanwhile, on January 28, 2020, Defendants moved to dismiss the Amended Complaint, including on the ground that The Institutes' unfair competition claim could not survive because Pennsylvania does not recognize it.  App.2158-App.2175.  The district court adopted Defendants' reasoning and dismissed that (and other) claims.  App.1-App.2.

On May 18, 2020, Defendants filed an answer with affirmative defenses, and Posner asserted counterclaims for breach of contract, violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), and abuse of process, claiming *for the first time*—six months after The Institutes first filed suit and eight months after her employment was terminated—that she was entitled to over $500,000 severance and an unstated, unquantified amount of commissions

based on the terms of her Offer Letter.[2]  App.2259-App.2305; App.2343-App.2362.

Notwithstanding her pending Florida administrative complaint (filed by different lawyers), Posner pled here that The Institutes is governed by *Pennsylvania's* WPCL.  *Id.*  But when the administrative complaint cleared, she filed a complaint in *Florida* state court against The Institutes, alleging that The Institutes violated *Florida* law by discriminating and retaliating against her during her employment in *Florida* by a company doing business in *Florida*.  Discrimination Action, Dkt. 1-1.

That action was removed to federal court and transferred to the same district court judge as the matter on appeal.  *Id.*

### ii.     Discovery.

Posner did not provide a preliminary calculation of her claimed commissions or identify what commissions were allegedly unpaid during discovery.  The Institutes requested an itemization "by customer, member, advertiser or sponsor, date and amount, every sale advertisement, sponsorship or other transaction" as to which Posner contended she was entitled to a commission she did not receive, App.14963, as well as documents used to answer the Interrogatory, App.14959.

---

[2]     The district court dismissed the abuse of process claim.  App.2686-App.2688.

Posner refused to provide the information, stating that the responsive information was "within plaintiffs' possession and control." App.14963; App.14959. She later moved to de-designate commission spreadsheets produced by The Institutes as "attorneys' eyes only" so that she could personally review them to make out her claim. App.3034-App.3050.

### iii. Motion for Summary Judgment.

After discovery closed, The Institutes moved for summary judgment on Posner's commissions. App.3962-App.3963. Posner attached two spreadsheets to its cross motion (Exhibits C and D)—that for the first time identified what she contended was owed to her. App.15642-App.15664.

The district court granted The Institutes' motion in part and denied it in part. In its opinion, it ruled that for pre-July 1, 2019 sales, The Institutes was required to pay Posner an 8 percent commission after the sponsor had paid in full, but regardless of whether the event took place; post-July 1, 2019, The Institutes was required to pay Posner an 8 percent commission on all sales only after both the sponsor had paid in full and after the event took place. App.5758-App.5760. Either way, Posner needed to be employed by The Institutes when all conditions precedent to payment were satisfied and when the payment was scheduled to be paid. *Id.*

The district court ruled that Posner could present evidence to the jury regarding only (i) commissions for sales identified on Exhibit C that were paid in full prior to July 1, 2019; and (ii) commissions for sales identified on Exhibit D for events that occurred and were paid in full by August 30, 2019. App.5760-App.5763. Although summary judgment invalidated Exhibits C and D, Posner did not update her claimed commissions on her exhibit list, by way of discovery, or in her Trial Brief, although she was required to do so by Local Rule 16.1(c)(3). App.5772-App.5802.

### iv. Motions *in Limine*.

Six motions *in limine* are relevant here:

- The Institutes moved to preclude Posner from referring to herself as a single mother. App.5902-App.5909. The district court denied the motion. App.6186.

- In her Trial Brief, Posner purported to reserve her right to claim an 8 percent commission on all CLM sales, not just those she generated. Because of summary judgment, The Institutes moved to preclude Posner from advancing that position. App.5910-App.5917. The district court granted the motion. App.6187.

- Posner argued that the alleged "discriminatory conduct" she claimed violated Florida law was material to her Pennsylvania claims, and The

15

Institutes moved to preclude her double-dipping.  App.6188-App.6198.  The district court precluded testimony about Posner's discrimination claims.  App.6259.

- Posner moved for an order precluding The Institutes from eliciting evidence regarding Hard Drive B (App.5833-App.5841) and to preclude The Institutes from eliciting testimony that she destroyed evidence (App.5878-App.5886).  The district court denied the first motion.  App.6183.  The second motion was denied without prejudice to renewal based on the evidence presented at trial.  App.6185.  The Institutes also filed a motion for sanctions for spoliation, App.6226-App.6258, which the court granted in part, to be addressed in the jury charge, App.5.

## B. Trial.

Although The Institutes is a leanly staffed non-profit, Defendants opened by stating that this "is a case of a businesswoman who is trying to run her small business, but her huge former employer has not paid her the commissions she is owed and has tried to shut her down, although she has no restrictions on competing."  App.6703.

In furtherance of that theme, defense counsel repeatedly referenced Posner's status as a single mother and her children—listing their names, ages, and

occupations and stating they wished they could have been in the courtroom to support her. App.6702. Counsel also repeatedly alluded to The Institutes' supposed size and revenue, without regard to its endowment. *See, e.g.*, App.6719 ("She was not looking to be a multi-million-dollar company. She was basically looking to pay the bills.").

Although Posner's lead counsel is a partner at a national law firm, she told the jury:

> You are going to see here in this courtroom that there is a lot of fancy technology that the other side is going to use, monitors, and you might even have hand-held things. We've got a laptop and a projector, but she does not have the budget for that technology. So I just want that to be clear, and I'd ask that you don't hold that against us. We don't have the budget for things like monitors that come in from an outside vendor.

App.6724. She then told the jurors that The Institutes pursued this matter to "crush" Defendants, and that those efforts worked, going so far as to say that Posner was forced to sell "the home in which she raised her boys, so she could defend herself in this lawsuit"—but what the jury did not know (due to the court's *in limine* rulings) was that **Posner** filed the first lawsuit here and that her legal bills included the claim **she** had brought. *Id.*

### i. Defenses Raised.

Defendants argued repeatedly that, given the lack of a noncompetition provision in Posner's employment agreements, she had a right to compete however she wanted. Relatedly, she submitted that the only restrictions that bound her—

i.e., the non-solicitation agreement—required proof of intent to harm The Institutes. *See* App.7865; App.8884. Posner freely admitted that she had "marketed" to CLM's sponsors, but she refused to call it "solicitation." App.7865.

Posner's explanations about the data she admittedly took ranged from saying she was unaware of what she had taken, App.7827; to making excuses for what she had taken (to establish her claims), App.8769-App.8770; App.8401-App.8407; to saying that what she took did not matter because it was old, App.8859; to blaming The Institutes for not subpoenaing third parties that might be able to substantiate how much she took and what she did with it, App.8770. Still, she acknowledged that she always had the documents. App.7805-App.7808.

At trial, Defendants' expert testified on direct that he found little proof of misappropriation in his forensic review, App.8469-App.8535, but on cross, he admitted that he could not express opinions on what he did not review; that missing evidence would make his task harder; and that he had not examined the allegedly stolen computer, iPad, or second gmail account. App.8537-App.8541; App.8581; App.8595-App.8597. He also recognized that Posner's transfer of data following her termination was "unlikely" to have been inadvertent and that he could not say whether she engaged in certain activities, such as printing documents. App.8557-App.8576.

### ii. Evidence of Counterclaims.

The day before the parties rested, Posner testified from two spreadsheets that she claimed showed $57,149.48 in unpaid commissions. App.16797-App.16809; App.16810-App.16811; App.8169. The first spreadsheet (D-91A, App.16797-App.16809) listed $45,519.78 in commissions that related to sales made before July 1, 2019. The second (D-91B, App.16810-App.16811) listed $11,630 in commissions for sales in September 2019. These spreadsheets were not the ones used at summary judgment and were not disclosed before Posner was asked about them during the second week of trial. App.8169-App.8173; App.8246-App.8252; *see also supra* at 14.

The Institutes objected immediately. App.8169-App.8173; App.8246-App.8252. In response, defense counsel represented that the new spreadsheets complied with summary judgment and suggested—but would not confirm—that each sale listed on the exhibits had been presented to the district court at summary judgment. App.8170; App.8384. On that basis, the district court permitted Posner to testify about them. App.8252.

After resting, The Institutes filed a motion for judgment as a matter of law, because D-91A had at least contained already-paid commissions. App.16575-App.16579. The district court denied the motion, but ruled D-91A and D-91B could not be shown to or go back with the jury. App.8772. Although

acknowledging the spreadsheets did not conform to the summary judgment ruling, the court authorized Posner to recalculate commissions and resubmit that figure. App.8772-App.8773.  The district court then said:

> The argument whether The Institutes paid those commissions or not, it's up in the air.  ***There was no evidence whether The Institutes did or did not pay.***  It goes to the jury for their determination as to what they believe occurred with some of those commissions.

App.8749 (emphasis added).

Posner did not submit a revised calculation or spreadsheet for the district court's review and analysis.  Instead, her counsel simply used a revised number in closing, representing the number as blessed by the court:

> So when we calculate the total commissions owed, we do that based upon Ms. Posner's testimony; we do that based upon the spreadsheets from The Institutes; we do that based upon the commission reports. And we have made an adjustment, true, to the amount that we used here in court, ***and that's based upon feedback that we received from the Court based upon their own review of the spreadsheet that we had submitted***.

App.8886-App.8887 (emphasis added).  The district court sustained The Institutes' objection, but said only:  "I don't want to get the impression that I agreed to that number.  That's part of the issue.  The calculation was made by defense based on some comments the Court made.  I have nothing to do with that calculation." App.8887.  Undeterred, defense counsel plowed on:

> So in any event, this is what we submit Ms. Posner is not [sic] owed. It's a revised number, it was revised downward based upon our—the way we construed certain comments from the Court.  We contend that

she is owed $48,830.45 and that the evidence that we have submitted today establishes that.

*Id.* Defendants then argued that $800,000 (the amount at which The Institutes' expert valued the stolen information) was "crushing" "for a woman who lives in an apartment . . . in Florida," and asked the jurors to consider not the evidence, but whether Posner had "suffered enough." App.8897-App.8898.

### iii.    The Charge.

Relevant here, the jury was instructed that if The Institutes showed that Posner procured the confidential information "for the purpose of advancing a rival business interest" she was liable for the harm caused by "the diminished value of the information, the loss of control of that information, its disclosure or use or any benefit they obtain[ed] as a result of their unlawful conduct." App.9002-App.9003. The jury was further instructed that the risk of uncertainty as to the amount of damage must be borne by the wrongdoer. App.9018-App.9019. It was then instructed to award nominal damages, if "upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation or guesswork." App.9023.

### iv.    The Verdict.

The jury returned its verdict on May 2, 2023, finding in The Institutes' favor on two claims:  that Posner breached the confidentiality provisions of her

Employment Agreement (but not the non-solicitation provision) and that she converted The Institutes' confidential business information. App.16599-App.16603. On the counterclaim, the jury accepted counsel's representations in closing and found that The Institutes owed Posner $48,830.45 for unpaid commissions, to the penny what counsel had presented (but nowhere else in the record). *Id*. It awarded The Institutes the ***exact same amount***, characterizing it as "nominal." *Id.* The district court added liquidated damages of $12,207.61 in its judgment. App.6286.

### C. Post-Trial Proceedings.

#### i. Renewed Motion for Judgment as a Matter of Law.

Post-trial, The Institutes renewed its motion and challenged the entire list of commissions Posner submitted at trial as inaccurate. App.6366-App.6416. The Institutes highlighted copies of D-91A and D-91B, App.16575-App.16579; App.16580-App.16581. Through them, it demonstrated that the sales on D-91A were not commissionable because (i) they were already paid, (ii) the event did not occur before the last pay date prior to the termination, or (iii) for miscellaneous reasons. On D-91B, each sale was for events occurring in September 2019 and not earned until the following month, when Posner was no longer an employee at The Institutes and thus no longer eligible for commissions. App.16580-App.16581.

Based on one aspect of the inaccuracies, the district court reduced the commissions to $38,399,82, but refused any further relief. App.6-App.17. The district court added revised liquidated damages in its modified judgment and permitted Posner to file a fee petition (still pending) seeking fees and costs. *Id.*; App.21.

### ii. Motion for a Permanent Injunction.

Post-trial, The Institutes sought a three-year permanent injunction. App.6287-App.6324. The court denied the motion on December 15, 2023, reasoning that The Institutes could not demonstrate irreparable harm because The Institutes' expert at trial had quantified the value of the company's confidential trade secrets and the jury had just reduced them by awarding claimed damages. App.19-App.20.

## SUMMARY OF ARGUMENT

The jury found that Posner committed the tort of conversion and breached her contractual confidentiality obligation. In the most straightforward formulation, if someone takes something that does not belong to her, and to which she has no right, a court will say "give it back." Here, however, the court turned the jury's findings into a verdict that not only cost The Institutes the relief to which it was entitled, but gave her relief to which she was *not* entitled.

There are three ways the district court deprived The Institutes of the proper relief. *First*, it refused injunctive relief when the jury thought it was entering offsetting monetary awards. That was wrong because the monies were backward-looking and injunctive relief is forward-looking; wrong because the jury's award was, under the district court's instructions, a signal that damages were unquantifiable; and wrong because without an injunction, Posner is allowed to continue her wrongdoing. *Second*, it deprived the jury of the legal framework and the vocabulary to counter Posner's litany of misstatements that she can compete however she wants when it dismissed the unfair competition law as unauthorized by Pennsylvania law—a claim that not only *is* authorized by Pennsylvania law and for the very misconduct at issue here, but that likewise is remedied through injunctive relief. *Third*, it failed to recognize the deep prejudice that Posner's misstatements and ostensible "misplacing" of critical evidence caused and did not apply the Rule 37 standard, depriving the jury of proper instructions on how to view the skewed evidence.

At the same time, Posner was allowed to dodge and weave with her "Pennsylvania" wage claim while pursuing a "Florida" wage claim and to vouch for inaccurate and shifting commissions allegedly owed—and then be excused from a fundamental element of her proof—all without any regard for the fact that

the real reason she invoked Pennsylvania's statute was a (still-pending) fee award and liquidated damages.

The law, the facts, and equity all confirm that the verdict for The Institutes is incomplete and the verdict for Posner unsustainable.  Accordingly, this Court should reverse and remand for the entry of judgment and an injunction in The Institutes' favor on its claims and on Posner's counterclaim.

## ARGUMENT

**I.    THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT REJECTED THE REQUEST FOR A PERMANENT INJUNCTION.**

### A.    Scope and Standard of Review.

The grant or denial of a permanent injunction is reviewed for an abuse of discretion, which in turn is found when a court's decision "rests on an incorrect legal standard, a clearly erroneous factual finding, or a misapplication of the law to the facts." *T.D. Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019).

### B.    The District Court Erred in Precluding Injunctive Relief Merely Because the Jury Entered an Award on the Verdict.

There are two components to the harm Defendants imposed on The Institutes—one, the damage to the value of what The Institutes purchased, and two, the threat to the ongoing health of CLM's business from an unauthorized CLM replica.  The law provides damages for the first and injunctive relief for the second.

Miller, The Institutes' President and CEO, testified to how key the cultivated data was in acquiring CLM.  App.7201-App.7202; App.7211.  If instead of a data

repository Posner had taken, say, an original work of art and had destroyed it, it would have been a relatively simple matter to appraise that loss. But she did something different: she took reproducible data and used it to free-ride into a replica of her brother's business—measured as either avoided costs for her or as a diminution in the value paid for CLM *and* going forward harm and threat of harm. This Court has explained that with such injuries the question is not whether some of the harm can be measured monetarily; it is whether what can be compensated monetarily is the same as the injury the injunction addresses. Said differently, damages look to compensate for loss already experienced, but injunctive relief looks to prevent future harm. *See PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 163-64 (3d Cir. 2022) (injunction proper where damages award was for ***development costs avoided to remedy past misappropriation***, and the injunction covered ***later use*** of the misappropriated information); *Kenset Corp. v. Ilanjian*, 600 F. App'x 827, 831-32 (3d Cir. 2015) (summary judgment for conversion of confidential business information because it was improperly procured ***and*** grant of permanent injunction to protect against threatened use and disclosure).

In such cases, two prongs of the injunctive analysis—irreparable harm and lack of an adequate remedy at law—are sometimes collapsed and described as two aspects of a single inquiry in that the showing of irreparable harm is

26

interchangeable with the adequacy of legal remedies.  *See T.D. Bank*, 928 F.3d at

282 (copyright).[3]  There, the Court recognized that merely because some legal

remedy might be ***available***, a court cannot reactively assume that remedy to be

***adequate***, any more than it can reactively issue an injunction by relying on the

"exclusive nature" of the rights (there, under the Copyright Act) alone.  *Id*. at 283.

This is precisely the first error the district court made in its analysis here; it

looked at the fact that there was a dollar amount entered by the jury and concluded

that that number was the jury's resolution of all injury The Institutes pleaded or

faced.  Simply put:  it was not.  The Institutes pleaded and faced ongoing injury

from the touted ongoing use of converted and breaching confidential information.

The court erred in not perceiving or remedying that forward-looking harm.

---

[3]      There is some question whether an award of permanent (not preliminary) injunctive relief is governed by state law in a diversity case, given that the weight of authority considers a permanent injunction to be substantive but a preliminary injunction procedural.  Indeed, *PPG Industries* discussed just that issue and applied state law—which was the injunction this Court affirmed.  *See PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd*., 2020 WL 1526940, at *22-23 (W.D. Pa. Mar. 31, 2020).  Viewed as a Pennsylvania law question, the error is even starker, because in determining whether to award injunctive relief, a court must ***first*** ask whether there is a full, complete, and adequate remedy at law.  *See SLT Holdings, LLC v. Mitch-Well Energy, Inc*., 249 A.3d 888, 894-95 (Pa. 2021).  Indeed, the Pennsylvania Supreme Court has collapsed the permanent injunction inquiry to a simple two-prong test:  is there a clear right to relief and is there "adequate redress at law"?  *W. Phila. Achievement Charter Elem. Sch. v. Sch. Dist. of Phila*., 132 A.3d 957, 968 n.9 (Pa. 2016) (citing *Buffalo Twp. v. Jones*, 813 A.2d 659, 663 (Pa. 2002)).  The jury's verdict answers the first question and the ongoing harm answers the second.

## C. The District Court Erred in its Evaluation of the Jury's Award.

Even as to the question of the remedy of past harm, the district court erred. It thought the jury had simply reduced the amount testified to, but that disregards the jury's entry on the verdict sheet based on the court's own instruction. The court likely thought the jury reduced the amount of damages testified to because Posner argued that files in isolation were not worth much because each contained data she could have gotten elsewhere. App.8237-App.8239. And under Posner's view, although she admittedly took the data, it also "aged," rendering it less reliable and thus less valuable as time went on. App.8859. Moreover, the jury found conversion of confidential data but not statutory misappropriation of trade secrets. App.16599-App.16603.

Certainly, the testimony of Jeffrey Scheidt, who had been a part of The Institutes when it acquired CLM, fit in well with the jury's instruction to award damages based on diminished value to The Institutes or benefit to Ms. Posner. App.9002-App.9003. He testified that the value Posner received and The Institutes lost, demonstrating that $800,000 of the price The Institutes paid for CLM was now with Posner. App.7635-App.7637. On cross, he was asked how to apportion value to specific downloaded files, such that the jury could calculate its own number if it found that some, but not all the data were wrongfully taken; he

28

testified that he had not made and could not make that calculation. App.7673-App.7675.

The Court instructed the jury what to do in such circumstances: if "upon finding that some injury resulted from a given, unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation or guesswork," award nominal damages. App.9023. Courts presume that juries followed their instructions. *See CSX Trans., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). Here, it more obvious than a presumption, because the jury wrote "nominal damages" on the verdict form so there would be no mistake and no one would think that the jury had awarded an actual measure of the harm suffered. App.16599-App.16603. Given the instruction, the jury's verdict said it could not make The Institutes whole even for the past harm—which emphasized that injunctive relief was warranted—and warranted even if the only harm for the injunction was to remedy the past—which it was not.

Here, however, the district court should have been even more wary of the amount of the expressly nominal damages than in other cases. The last words the jury heard from Posner's counsel was a plea to award Posner $48,830.45 in commissions and award The Institutes nothing. App.8897-App.8898. The jury awarded that precise (incorrect and improper) amount to Posner, but instead of awarding The Institutes nothing, recognizing that the harm was real but

29

incalculable, it awarded the same amount—to the penny—to The Institutes as it did to Posner.  The jury thus acknowledged that what Posner had done was wrong, but, not wanting to hold her accountable for her wrong (or, as counsel framed it, to make her suffer), it used the award against her to offset the amount The Institutes would have to pay for commissions she supposedly demonstrated but did not deserve.  The verdict itself could thus have been challenged as a sympathy or compromise verdict,[4] but The Institutes has not asked for a new trial as to damages; the protection against harm going forward is more critical.

**D.      A Permanent Injunction Was Needed to Right Posner's Wrong.**

The answer to the question the district court did not ask—the second one—is that a permanent injunction is needed here.  Putting what came out in discovery and at trial into an ordinary business framework, what Posner explicitly was trying to do, and has so far been able to do with impunity, is to avoid the riskiest stage of a nascent business while trying to be all at once an exact replica of the current CLM, skipping a decade of costs and trial and error.  This year, for example, she is offering a Claims Academy—mimicking CLM's Claims College—even to the point of offering an "Insurance Claims Management Specialist" designation. https://www.theclaimsx.org/claimsacademy-2024 (last accessed 6/1/2024).  The

---

[4]      *See Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 456-57 (3d Cir. 2001) (new trial on liability and damages where concerned with a compromise verdict).

tracks will sound familiar, because they are CLM tracks: casualty claims, construction, cyber, transportation, and workers compensation. *Id*.

Posner suggested that she played a part in creating CLM's value, but that does not entitle her to appropriate to herself assets that she did not own. App.8099-App.8100. Rather, she had the fruits of her ***employment***, and that status carried over to The Institutes, as evidenced by the employment documents she signed—none of which entitled her to take confidential business data ***at all***. *See, e.g.*, App.8859 (asking rhetorically if she had the new, why she would use the old); App.8870 ("And by the way, thank goodness she did save those commission reports, because had she not saved the commission reports, she would have had nothing by way of evidence of her commissions until we were able to secure the spreadsheets two years later."); App.8874 (there were "certain emails that she printed . . . certain things that she wanted to save to pursue her commissions claim").

The Institutes had a replevin claim for the return of the data, which they recognized could be resolved through a permanent injunction. App.1927-App.1928. But the district court did not direct even that, and it never wrestled with the dilemma that a "return" of the data would pose. Confidential information is readily transferred from one device to another (which was how Posner converted it), but transfer does not ***move*** the data: it ***replicates*** it. Posner could, accordingly,

31

"give back" data and still keep it, and the only way to ensure that she does not profit from the stolen data is to require her to surrender it and to place restrictions on her ability to use it going forward. The greatest harm from such free-riding is that the harm does not stop or lessen as time goes on; instead, it multiplies.

As this Court, evaluating the DTSA, said in *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021), the loss of exclusivity which is the hallmark of the loss of trade secrets, "is not the only harm." *Id*. at 914.

> There are other, if not yet fully realized, injuries. Aurobindo's rapid market entry into a sector of the pharmaceutical industry with few competitors may well deprive Oakwood of market share. Utilizing Oakwood's trade secrets provides Aurobindo a jumpstart in an industry it would otherwise not have competitively joined for another decade. Aurobindo will avoid substantial research and development costs that Oakwood has already invested in its own product development.

*Id*. Indeed, that may be why the DTSA ***starts*** its discussion of remedies with injunctive relief, and then goes into alternative ways to measure harm at the time of trial without making the injunction and the award disjunctive. 18 U.S.C. § 1836(b)(3).

What The Institutes seeks is not an injunction against competing; it is an injunction against competing ***unfairly***; the common law claim the district court wrongly dismissed at the outset of the case—and the section question in this brief. When Posner left CLM, she deliberately took with her not the general sort of experience and know-how that would have allowed her to establish her own start-

up, but all the data and resources she needed to replicate an established CLM as an already successful company—what her counsel referred to as "business in a box." App.8828. By replicating with CLM data precisely what CLM did, she was able to project $790,438 in revenues in her first year—almost exactly the value of the data and relationships she transferred from CLM to Claims Xchange. *Compare* App.8167-App.8168 *with* App.7635-App.7637.

The Institutes were and are entitled to a permanent injunction requiring Posner to return everything she took from The Institutes and precluding her from offering what The Institutes offers—the only way to protect against her returning confidential information in one form while maintaining it in another.

## II. THE AMENDED COMPLAINT ADEQUATELY PLEADED—AND THE FACTS ADDUCED AT TRIAL ESTABLISHED—THE COMMON LAW CAUSE OF ACTION OF UNFAIR COMPETITION, AND THE DISTRICT COURT ERRED IN DISMISSING IT.

### A. Scope and Standard of Review.

In evaluating a district court's grant of a motion to dismiss, the court first identifies the elements that must be pleaded to state a claim; then, looking only at the well-pleaded allegations, "assume[s] their veracity" and "the veracity of 'all reasonable inferences that can be drawn from' those allegations." *Oakwood*, 999 F.3d at 904. If those criteria are satisfied, the claim should proceed, even if the court considers recovery on the claim to be "very remote and unlikely." *Id*.

33

In this diversity case, there is a separate standard and scope of review that applies, because state law is "announced by the highest state court," and in the absence of such a decision, a district court is to look at an intermediate appellate court's "considered judgment upon the rule of law it announces" or whether the Pennsylvania Supreme Court denies allowance of appeal and the extent to which the Courts of Common Pleas have applied the intermediate court's decision. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253-54 (3d Cir. 2010) ("[W]e may not 'act as a judicial pioneer' in a diversity case.").

## B. The District Court Failed to Examine Pennsylvania Law on Unfair Competition.

Unfair competition is a common law claim that has been recognized by the Pennsylvania Supreme Court since at least the early 1900s.

In its Amended Complaint, The Institutes explained how it serves the property-casualty and risk management industries through its designations, certifications, educational programs, and publications. App.1903 ¶ 9. In 2018, Adam Potter decided to sell CLM and other assets, a proposition so appealing to The Institutes that it paid $19,294,147 to acquire those assets. App.1903-App.1904 ¶¶ 10-14. At trial, it became evident that, given subsequent payments, the ultimate acquisition cost was more than $22 million, and 90 percent of the acquisition was for CLM. App.7632-App.7634.

Among the assets were databases, curricula, and syllabi that took years to develop. App.1904 ¶¶ 15-19. Yet, post-acquisition, and even while Posner was working for CLM, she engaged in self-promotion, and in the promotion and expansion of the business her brother had retained so that it competed against CLM. App.1908-App.1912 ¶¶ 42-62. Posner was terminated on September 20, 2019, formed Claims Xchange seven business days later on October 1, 2019, and was able to offer "member events" beginning December 4, 2019, paid for by CLM sponsors. App.1916-App.1917 ¶¶ 77-78, 81, 84-87. The information needed to pull off such an event on such short notice came from CLM. *See* App.1913-App.1916 ¶¶ 65-76, 79, 82-83, 85-87.

On the strength of these pleaded facts, The Institutes pleaded Count III, a claim of unfair competition. App.1923-App.1925 ¶ 122. Defendants moved to dismiss, arguing "that cause of action does not exist in Pennsylvania," citing to federal cases discussing the Restatement (Third) of Unfair Competition, which is a specific recitation of a specific set of precepts and is not coterminous with a common law cause of action. *See* App.2166-App.2167. Despite recognizing that Pennsylvania has not adopted the Restatement (Third) of Unfair Competition, Posner argued that The Institutes could not satisfy the inapplicable criteria—including limiting it to acts and practices protected by federal and state statutes that "cause[] harm to the plaintiff's commercial relations." App.2167-App.2168.

The district court should have recognized the fallacy of Defendants' premise immediately, given The Institutes' citation of *Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.*, 192 A.2d 657, 663 (Pa. 1963), a Pennsylvania Supreme Court case that clearly discusses Pennsylvania's broadening of the original misrepresentation-based unfair competition claim to include "a cause of action in tort against a competitor allegedly converting the news items to its own uses in pursuit of advertising," where "[a]dvertising is the life-blood of newspapers, radio and television and the presentation of news by all three media is a service designed to attract advertisers." *Id.* That is precisely the free-riding harm The Institutes pleaded.

In *Pottstown*, the Pennsylvania Supreme Court explained the distinction between "competition" and "unfair competition," observing that "[w]hile a competitor may, subject to the patent, copyright and trademark laws, imitate his rival's business practices, processes and methods, yet the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil." *Id.*

*Pottstown* was grounded in a whole line of Pennsylvania Supreme Court cases, starting at least in 1908 and emphasizing the number of forms unfair competition can take. *See Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co.*, 70 A. 968, 972 (Pa. 1908) (the "studied effort" on the part of

36

Vicente Portuondo "to imitate the markings, labels, and general method of dressing his goods that had been pursued by Juan F. Portuondo," and thereby "to profit on the magic that had already been given to the name of Portuondo by his brother" was "a course of dealing…such as constituted what is known in the law as 'unfair trade competition.'").

Later, the Pennsylvania Supreme Court summarized the tort as "anything done by a rival in the same business by imitation or otherwise, designed or calculated to mislead the public in the belief that in buying the product offered by him for sale, they were buying the product of another's manufacture, would be in fraud on that other's rights, and would afford just ground for equitable interference" without needing to show fraudulent intent. *Consol. Home Specialties Co. v. Plotkin*, 55 A.2d 404, 407 (Pa. 1947) (discussing *Portuondo* and *American Clay Mfg. Co. v. American Clay Mfg. Co. of N.J.*, 47 A. 936 (Pa. 1901)).

That court later added that "the law will also prevent an employe[e] from using customer contacts as well as confidential customer information to his own advantage by soliciting the customers of his former employer." *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 843 (Pa. 1957). Even without an express agreement, "an employer is entitled to equitable protection against the competitive use of confidential and secret information obtained as a result of the trust and

confidence of previous employment." *Carl A. Colteryahn Dairy, Inc, v. Schneider Dairy*, 203 A.2d 469, 471 (Pa. 1964).

Moreover, the Pennsylvania Supreme Court disabused any notion that tortious behavior should be excused in the name of "competition." *See Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc*., 360 A.2d 200, 205 (Pa. 1976) ("Ours is a competitive business system in which it is only natural for one businessman to observe and discover what the competition is doing. This Court, however, will not put a stamp of approval on the use of misrepresentations and espionage as means that fall within the 'generally accepted standards of commercial morality and reasonable conduct.'"). As is evident from just the excerpts cited above, in Pennsylvania, "unfair competition" summarizes behavior—including the behavior Posner was alleged (and later proven) to have engaged in—so as to exploit what another has built through deception, confusion, or conversion.

Nonetheless, the district court adopted Defendants' fallacious reasoning almost verbatim, reasoning that "no Pennsylvania appellate court has formally recognized the common law tort of unfair competition" and then applying the Restatement (Third) of Unfair Competition § 1 to reject as inadequate the use of The Institutes' confidential information to "solicit Plaintiffs' clients, vendors, advertisers, and/or sponsors" as well as recruiting CLM sponsors to Claims

Xchange's Board of Directors—and all of the other allegations in the Amended Complaint—as "not amount[ing] to commercial harm" or "actual harm to any of Plaintiffs' commercial relations." App.1-App.2 n.1.

Against that backdrop, the district court's error in this regard was threefold.

*First*, the district court did not give credence either to the highest court of the state whose law it was applying or to the well-pleaded allegations as set forth above.

*Second*, Pennsylvania distinguishes between a legal damages remedy (which is what quantifying customer loss would demonstrate) and equitable injunctive or accounting of profits remedies, and it permits injunctive actions to proceed without proof of damages. *Den-Tal-Ez, Inc. v. Siemens Cap. Corp.*, 566 A.2d 1214, 1232 (Pa. Super. 1989) ("The proper inquiry is not whether defendant already has used or disclosed, but whether there is sufficient likelihood, or substantial threat, of defendant doing so in the future."); *cf.*, *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) ("[A]n accounting for profits is a form of equitable relief, and it does not follow as a matter of course . . . . It will be denied where an injunction satisfies the equities of a case, as for example, where there is a clear showing that no profit was made."). This misconstruction of Pennsylvania law presaged the district court's refusal of a permanent injunction, discussed above.

***Third***, this Court has recognized that the Pennsylvania Supreme Court does not slavishly apply Restatement provisions. *See Checker Cab Phila., Inc. v. Uber Techs., Inc.*, 689 F. App'x 707, 720 (3d Cir. 2017) ("The Pennsylvania Supreme Court has in fact said it is 'difficult to imagine a modern court simply adopting something so broad-based and legislative in character as an outside organization's Restatement of Law'" (citing *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 353 (Pa. 2014))).

The point is in no way academic: The dismissal deprived the jury of the legal framework and vocabulary to address as a matter of law the misconduct they saw and heard—i.e., that Posner planned to and in fact did replicate CLM using its own confidential information that she stole. And it allowed counsel to argue repeatedly—and contrary to Pennsylvania law—that there were and are no limits on Posner's ability to compete. App.8854-App.8855; *see also* App.8877; App.8884; App.8887.

## III. THE DISTRICT COURT DID NOT PROVIDE THE JURY WITH THE PROPER GUIDANCE HOW TO REMEDY DEFENDANTS' MANIPULATION OF THE CONFIDENTIAL AND TRADE SECRET INFORMATION AT ISSUE IN THE CASE.

### A. Scope and Standard of Review.

This Court reviews a district court's decision on whether to impose sanctions for violations of discovery for an abuse of discretion. It has said that a district court abuses its discretion if it has based "its ruling on an erroneous view of the

law or on a clearly erroneous assessment of the evidence." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (citing *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009)). The district court's discretion is also bounded by the twin requirements that a sanction be just and that it be specifically related to the claim or defense at issue in the order to produce discovery. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). As an outgrowth of that principle, a sanction—whether default judgment, legal presumption, or precluding evidence—"operate[s] within the parameters of the claims and defenses raised by the parties," and a court cannot sidestep the underlying substantive law in crafting a sanction. *Clientron, Corp. v. Devon IT, In*c., 894 F.3d 568, 581-82 (3d Cir. 2018). The construction of the Rules of Civil Procedure is a question of law over which this Court's review is plenary and *de novo*—and that is true under Pennsylvania law as well. *United States v. $8,221,877.16*, 330 F.3d 141, 150 n.8 (3d Cir. 2003); *HTR Rests., Inc. v. Erie Ins. Exch.*, 307 A.3d 49, 58 (Pa. 2023).

**B.      The Entire Litigation Was Tainted by Defendants' Discovery Abuses.**

This Court has taken a holistic approach to discovery abuses, recognizing for example that "a party's failure to produce a document can have the same practical effect as destroying it." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Thus, preclusion of damages evidence due to a late filing of a damages

calculation has been upheld where the tactic deprived the other party of "a full opportunity to examine" the damages claim. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224, 226 (3d Cir. 2003) (rejecting the argument that partial preclusion would have been appropriate, even though the ruling resulted in the claim's dismissal).

From that perspective, the record here is replete with sanctionable conduct. For example, the commissions Posner claimed were requested in interrogatories and required to be in the Trial Brief but were narrated to the jury without being timely provided to the district court or The Institutes. *Supra* at 13-14, 19-21. Defendants were directed by the court to identify and produce devices and accounts that contained relevant information, but identification was belated, and production was only partial, though always with an excuse—a wiped history, a deleted account, devices "misplaced" or "stolen."  Those excuses paralleled elaborate steps Posner took to keep her conduct secret—having third parties send emails to CLM customers, texting people that she could not disclose news yet or that she needed to talk by telephone to protect the privacy of her communications. *Supra* 7-10.

Both parties filed motions *in limine* about the critical information that was missing.  For their part, Defendants filed two motions *in limine* to preclude any reference to what Posner had not produced under Federal Rules of Evidence 401 and 403.  One sought to preclude any evidence of The Institutes' Hard Drive B that

Posner had connected to her new Lenovo computer but did not timely return, arguing that because the data on the hard drive was from 2016 and 2017 and, in her view, "lawfully acquired" she had a right to retain it, App.5833-App.5841. The second sought to preclude "an inference of spoliation" and argued that Posner "did nothing wrong" in deleting the gmail account used to transmit The Institutes' data, in withholding her Lenovo laptop which was then conveniently stolen, and in withholding her son's iPad used to conduct business, also apparently lost. *See supra* App.5878-App.5886.

For its part, The Institutes explained that those motions did not come close to addressing the breadth of Posner's discovery abuses, and in addition to its oppositions, it filed its own motion *in limine*, providing a detailed recitation of her behavior through discovery and asking for a mandatory, or at least a permissive adverse inference under Federal Rule of Civil Procedure 37(e), as well as for the ability to adduce evidence and testimony about the spoliated evidence. App.6226-App.6258. The court granted The Institutes' motion in part, to be reflected in the jury instructions.

But instead of strengthening The Institutes' proposed jury instructions,[5] as is to be inferred from the grant of the motion for sanctions the district court **narrowed** and **weakened** them,

> The Institutes' Proposed Instruction No. 5 read:

> You have heard that Defendant Posner deleted the browser history on her Dell laptop before returning the laptop to The Institutes, deleted her sydneyposner1@gmail.com account, did not produce her Lenovo laptop for an inspection, and did not produce the iPad she used to access her Gmail account on the morning of September 23, 2019. If you find that this evidence was in Posner's control, **the evidence** would be relevant and helpful to Posner, and Posner does not satisfactorily explain why it was not produced during trial, you may find that the evidence would have been unfavorable to Posner.

App.5925 (emphasis added). What the trial court charged instead was:

> If you find that this evidence was within Ms. Posner's control, the evidence would be—and the elements would be relevant and helpful to Ms. Posner, and Ms. Posner did not satisfactorily explain why **these devices** were not produced during trial, you may find that the evidence would not—you may find that the evidence would have been unfavorable to Ms. Posner.

App.8989-App.8990 (emphasis added). In the same way, The Institutes' Proposed Instruction 6 read:

> If a party intentionally destroys a relevant document and does not satisfactorily explain why they destroyed the document, you may find that this document would have been unfavorable to the party who destroyed it.

---

[5] The Institutes' proposed instructions addressed the destruction of evidence; Posner proposed none on this subject.

44

App.5926.  But the Court charged:

> If the party intentionally destroys a relevant document or object and does not satisfactorily explain why they are destroyed, you may find that the document and/or object would have been unfavorable to the party who destroyed it.  You must decide ***if any of the equipment Ms. Posner was to return to The Institutes*** was destroyed or not, and if the explanation provided by Ms. Posner was credible.

App.8990 (emphasis added).

Under Federal Rule of Civil Procedure 37(e), a court is authorized to make whatever order is needed to cure prejudice, and if the party acted with intent to deprive another party of the information's use may "presume that the lost information was unfavorable to the party"; "instruct the jury that it may or must presume the information was unfavorable to the party"; or "dismiss the action or enter a default judgment."  The district court granted only in part The Institutes' motion *in limine* and then weakened the inference instructions by tailoring them to devices and equipment when the claims in the case were about information, and the record was about the information that was not produced. This did not cure the prejudice, which is what Rule 37 requires.

It is possible that spoliation is a substantive question of proof to be decided by reference to state law.  *See, e.g., Capogrosso v. 30 River Ct. E. Urban Renewal Co.*, 482 F. App'x 677, 682 (3d Cir. 2012); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (recognizing that either state law or a federal court's inherent authority to sanction could be at issue).  Pennsylvania law, like federal

law, would not countenance finding a sanction warranted and then failing to charge the jury that the conduct was culpable, the spoliating party at fault, and the lack of information not evidence of the non-spoliating party's lack of proof (which is what Defendants argued it was, App.6226-App.6258).

Pennsylvania's Rule of Civil Procedure 4019, for example, authorizes a court upon motion to direct that facts are to be taken as established, to preclude the offending party from supporting claims or defenses or introducing certain evidence, to strike out some or all of pleading, to hold in contempt, or to make "such order with regard to the failure to make discovery as is just." Pa.R.Civ.P. 4019(c)(1)-(5).

Because both jurisdictions regulate the conduct at issue here through rules of civil procedure, it would make sense that the sanction is an exercise of federal authority (subject, however, to the substantive bounds of Pennsylvania law, as explained in *Clientron*, *supra*). But whichever law governs, the rules allocate to the court certain findings and then direct it to charge the jury accordingly or to take more drastic measures, if needed to cure the prejudice. In this case, however, and despite being asked to do so, the district court—with the full record, including the false representations made to the court itself—did not tell the jury it had found (though it must have) that Defendants deprived The Institutes of information it would have used in the litigation and that they did so intentionally, and it did not

tell the jury that therefore it either must or may presume that that information—here trade secret and confidential information of The Institutes, both as to its taking and its use—was unfavorable to her. The district court's switching of what was spoliated ***and at issue in the case*** as well as its failure to provide the jury with the cure of prejudice the Rules require was thus an error of law as well as an abuse of discretion.

## IV. THE JUDGMENT ON THE COUNTERCLAIM CANNOT STAND.

Posner bore the burden to prove that commissions were owed to her and unpaid to prevail on her WPCL and breach of contract claim and recover commissions (and, with regard to the WPCL claim, to be entitled to seek liquidated damages and fees). *Carlson v. Qualtek Wireless LLC*, 2023 WL 5094566, at *4 (3d Cir. Aug. 9, 2003) (WPCL claim) (citing *Braun v. Wal-mart Stores, Inc.*, 24 A.3d 875, 954, 957 (Pa Super. 2011)); *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 102 (3d Cir. 2001) (breach of contract). Instead, Ms. Posner's counterclaim changed in type and form throughout the litigation—i.e., what was pled in the counterclaim was not what Ms. Posner argued at summary judgment; what was presented as evidence on summary judgment was not what was presented at trial; and what Ms. Posner testified to when she took the stand was not the number defense counsel ultimately presented to the jury. Because she completely failed in her proof, The Institutes was entitled to judgment

as a matter of law, or at least a new trial, on the commission counterclaim, and the

district court erred by denying The Institutes' post-trial motion.

A.    **Scope and Standard of Review.**

The district court's denial of The Institutes' summary judgment motion and

renewed motion for judgment as a matter of law, like all pure issues of law, is

reviewed *de novo*. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.

1993). The denial of a motion for a new trial is reviewed for abuse of discretion.

*Curley v. Klem*, 499 F.3d 199, 205-06 (3d Cir. 2007).

B.    **The District Court Erred by Permitting Posner to Use a Never-Before-Presented Damages Calculation with the Jury.**

As discussed above, the commissions Posner claimed she was owed were

repeatedly requested in discovery but not presented initially until summary

judgment, and when those were found inconsistent with her contracts, the new

calculations were withheld until the second week of trial, after Posner had already

taken the stand in The Institutes' case and was being presented in her own. As the

authorities above confirm, Posner's discovery violations disentitled her to rely on

the never-before-presented exhibits allegedly calculating the commissions. This

Court held as much in *Ware*, affirming a district court's decision to exclude

damages evidence where the plaintiff failed to submit a damages calculation until

one week ***before*** trial. 322 F.3d at 224, 226. The commissions calculation relied

on here was submitted ***two weeks after trial started***, and then was modified again for closing without any opportunity for testing by The Institutes.

**C.     No Evidence Supports the Jury's Verdict on the Counterclaims.**

In its summary judgment opinion, the district court determined as a matter of law that sales made before July 1, 2019 were commissionable so long as the sponsors had paid in full, but regardless of whether the event occurred.  That determination was based on the ambiguous (and disputed) meaning of the term "sale" as used in the Offer Letter, but the court failed to look to the parties' course of dealing and intent to discern that meaning, as was required.  *Commonwealth. v. UMPC*, 208 A.3d 898, 909-10 (Pa. 2019) ("If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper.").  If it had done so, it would have recognized that the uncontroverted evidence— including deposition testimony from Posner herself—confirmed that the exact opposite was true:  sales made before July 1, 2019 were commissionable, ***but only if the event had occurred***, regardless of whether the sponsors had paid in full.  *See, e.g.*, App.14761-App.14762; App.14766-App.14767; App.14779-App.14782.  Had the court taken that extra (but required) interpretative step, Posner's commission counterclaims would not have survived summary judgment.

But the district court allowed the commission claim to proceed to trial, and at trial, Posner had the burden to prove before the jury that each and every claimed

49

commission was both earned and unpaid.  *See, e.g.*, *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 470 (E.D. Pa. 2013).  She did not do so, and thus, the jury's verdict in her favor not only contradicted the evidence, but had no evidentiary foundation whatsoever, and therefore must be overturned.  *See Fineman v. Armstrong Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992) (a court may displace a verdict when the record is "critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief").

As a prefatory matter, the testimony and evidence elicited at trial confirmed The Institutes' interpretation of the pre-July 2019 commission structure on summary judgment (and the evidence presented at that stage in the proceedings)— namely, that all the parties understood that, before July 1, 2019, The Institutes' policy and practice was to pay commissions ***after an event was held***, regardless of whether the sponsor had paid for the sponsorship in full by the time the event occurred and the commission accrued.  *See, e.g.*, App.7494; App.16939; App.16942.  If further substantiation were necessary (and it was not), Posner's conduct while employed at The Institutes provides it:  though she had plenty of opportunities to challenge commission payments—and, in fact, testified that she objected each and every time she detected an issue, *see* App.8128—she never complained in the year she worked for The Institutes that she was entitled to commissions before an event occurred.

50

Given that evidence, ***none*** of the sales listed on exhibits D-91A and D-91B are commissionable as a matter of law. As The Institutes aptly demonstrated in their post-trial briefing (*see generally* App.6367-App.6416) and the color-coded spreadsheets attached thereto, none of the sales identified on D-91A are commissionable because the record establishes they were already paid (and therefore not owed); the event did not occur before the last pay day prior to Posner's termination (and thus were not earned under either commission structure); or miscellaneous reasons (e.g., the spreadsheet lacked information as to the date the sponsor paid its invoice, or payment for the sponsorship was refunded). App.16575-App.16579. And all the sales identified on D-91B corresponded to events scheduled to occur in September 2019, rendering them "earned" in October 2019, when Posner was no longer an employee of The Institutes and no longer entitled to commissions. App.16580-App.16581.

But even if that were not the case, and some or all of the entries on those spreadsheets were commissionable, the number the jury heard—and ultimately awarded—was argument of counsel, not evidence. Third Circuit Model Civil Instruction 1.5 ("The following things are not evidence:…Statements, arguments, and questions of the lawyers for the parties in this case."); *Reed v. Phila., Bethlehem & Ne. R.R. Co.*, 939 F.2d 128, 133 (3d Cir. 1991) ("The prohibition against use in argument of evidence not in the record is straightforward."). To be

51

sure, Posner looked at D-91A and D-91B and testified on the stand that she was entitled to $57,149.48, the sum of the commissions her counsel placed on those spreadsheets. App.8270. But Posner did not walk the jury through those spreadsheets line-by-line or otherwise testify to the facts or evidence that would substantiate the claimed commissions. She did not testify about the sponsors listed there, the events they supported, or whether the identified entries were earned, paid, or had occurred. Stated differently, there is no evidence of precisely what commissions were included in either the commissions calculation Posner testified to on the stand.

The error here was fundamental, because the district court acknowledged that Ms. Posner had presented no evidence to support her argument that any of the commissions she claimed were unpaid, an essential element of her proof. App.8749 ("The argument whether The Institutes paid those commissions or not, it's up in the air. There was no evidence whether The Institutes did or did not pay."). Thus, the demand should never have been allowed to go to the jury. The shrugging aside of an essential element of the burden of proof is especially pernicious in this case, where the statute authorizes penalties (liquidated damages, which the district court imposed; and attorneys' fees, the amount of which the district court is currently weighing) for non-payment. *Cf.*, *DeVore v. W.C.A.B.*

*(Sun Oil Co.)*, 645 A.2d 917, 920 (Pa. Cmwlth. 1994) (statutory violation must appear of record before penalties can be imposed).

The error was magnified exponentially when Posner's inadequate testimony as to ***$57,149.48*** on the stand was proven inconsistent with the Court's direction and with ***no*** testimony in support, defense counsel argued during closing that there were ***$48,830.45*** in commissions owed—a number never uttered in either parties' case, but the exact number—to the penny—the jury awarded.

It is clear that the jurors came to that number because defense counsel told them to do so, and assured them that the number was blessed by the court. App.8886-App.8887 ("So when we calculate the total commissions owed, . . . that's ***based upon feedback that we received from the Court based upon their own review of the spreadsheet that we had submitted***.") (emphasis added). And though the district court clarified that it had no part in calculating the revised number, the bell had already been rung, and defense counsel was permitted to say, yet again, that the "revised number" was based upon "the way we construed certain comments from the Court" and that "the evidence that we submitted today establishes that." App.8887.

Because the district court had not seen or reviewed the revised calculations and there was no testimony about them, the district court did not permit D-91A or D-91B to be published to the jury or go back with them for deliberations.

App.8271.  Far from mitigating the prejudice, it magnified it, because the jurors could not even attempt to piece together or test the number that they had been told. *Cf. United States v. Navarro*, 145 F.3d 580, 593 (3d Cir. 1998) (observing that while it is permissible for counsel to argue inferences, an inference must flow logically and convincingly from the facts in the record); *see also United States v. Weatherly*, 525 F.3d 265, 272-73 (3d Cir. 2008) (counsel's argument "crosse[d] the line" when it relied upon "extra-record evidence" or "urg[ed] the jury to speculate rather than infer").  That, too, makes clear that the verdict for Posner was based not on evidence (because the jury had none to recall or review) but on what defense counsel told them and what they thought the court had blessed.

The jury's verdict thus must be overturned, because, as this Court held in *Fineman*, 980 F.2d at 190, it can displace a verdict when the record is "critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief."

**D.     Even if There Were Proof, a New Trial Would Be Warranted.**

Even if Posner had proof of earned and unpaid commissions, the district court still abused its discretion by permitting her to present two not-previously-produced-or-presented spreadsheets—D-91A and D-91B—that purportedly calculated that Posner was entitled to $57,149.48, but that ignored the Court's

ruling on summary judgment and did not take account of all the commissions she had already received while employed. *See generally* App.6366-App.6416.

The prejudice caused by the district court's decision can be traced through The Institutes' various objections, arguments, and motions that followed the introduction of the new spreadsheets. Responding on-the-fly after seeing the spreadsheets for the first time, counsel for The Institutes instantly identified certain errors, and objected to any use of the spreadsheets on that basis, as well as the unfairness of being asked to undertake an effective cross-examination on not-previously-produced "damages." App.8247-App.8250. The district court erroneously overruled the objection, and although by the time the parties rested, The Institutes had identified even more entries that were improper, and moved for judgment as a matter of law on that basis, App.6260-App.6284, that was denied as well. By post-trial briefing, The Institutes had conclusively demonstrated that Posner was not entitled to a single commission identified on D-91A or D-91B, and that the number presented to the jury (both by Posner and her counsel) were unequivocally wrong. App.6393-App.6398. Such sandbagging is impermissible for a reason: Had Posner disclosed the spreadsheets in discovery, in her Trial Brief, or on her exhibit list, the testing of the data would have occurred outside the presence of the jury.

It is no excuse that the offending exhibits were derived from a different master spreadsheet The Institutes produced in discovery because what was presented at summary judgment was not what was presented when Posner took the stand.  Nor was it the number defense counsel ultimately announced to the jury in closing.  Each change in Posner's commission calculation needed to be documented subject to testing and each entry ultimately claimed substantiated. That the district court further reduced the number argued on post-trial motions, App.6366-App.6416, is evidence that the numbers were not timely tested—as well as, as set forth above, unsubstantiated.  At the least, the district court abused its discretion in not awarding a new trial.  *See Price v. TransUnion, LLC*, 839 F. Supp. 2d 785, 806 (E.D. Pa. 2012) ("[A] court may grant a new trial when counsel's closing argument refers to evidence not in the record or other extraneous matter if the court finds there is a 'reasonable probability of influencing the verdict.'") (quoting *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977)).

## <u>CONCLUSION</u>

For all the reasons set forth above, the Court should REVERSE the district court and:  DIRECT the entry of a permanent injunction and GRANT judgment as a matter of law on Posner's counterclaim.  In the alternative, the Court should GRANT a new trial on The Institute's claims, including unfair competition, and DIRECT the district court to (a) order appropriate sanctions pursuant to Federal

Rule of Civil Procedure 37; and (b) disallow any commissions claimed but not earned and unpaid.

Date: June 3, 2024          Respectfully Submitted,

/s/     *D. Alicia Hickok*
D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325696)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700 (telephone)
(215) 988-2857 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

**CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, D. Alicia Hickok, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/     *D. Alicia Hickok*
D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325696)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700 (telephone)
(215) 988-2857 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

Date: June 3, 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and Local R. 31.1, I certify the following:

1.      This brief complies with this Court's order of June 10, 2022 because it contains 12,574 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

3.      This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because CrowdStrike Windows Sensor version 6.49.16303.0 was run on the file containing the electronic version of this brief and no viruses were detected.

/s/      *D. Alicia Hickok*
D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325368)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700 (telephone)
(215) 988-2857 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

Date:  June 3, 2024

1

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on June 3, 2024.  All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/    *D. Alicia Hickok*
D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325696)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
(215) 988-2700 (telephone)
(215) 988-2857 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

Date:  June 3, 2024

# United States Court of Appeals
# for the Third Circuit

THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY
UNDERWRITERS and THE INSTITUTES, LLC

*Plaintiffs/Counterclaim Defendants-Appellants*

v.

SYDNEY POSNER and CLAIMS XCHANGE,

*Defendants/Counterclaim Plaintiffs-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF PENNSYLVANIA, THE HONORABLE NITZA QUIÑONES ALEJANDRO
DISTRICT COURT NO. 2:19-CV-05369-NIQA

**APPENDIX**
**VOLUME I OF XLI (App.1-App.23)**

D. Alicia Hickok (PA ID 87604)
Elizabeth M. Casey (PA ID 325696)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
 (215) 988-2700 (telephone)
 (215) 988-2757 (facsimile)
alicia.hickok@faegredrinker.com
elizabeth.casey@faegredrinker.com

*Attorneys for Plaintiffs/Counterclaim Defendants-*
*Appellants The American Institute for Chartered*
*Property Casualty Underwriters and The Institutes, LLC*

# APPENDIX TABLE OF CONTENTS

## VOLUME I

Order Granting in Part and Denying in Part Motion to Dismiss
filed November 14, 2019 (Dkt. 34) ..........................................................App.1

Order Granting in Part and Denying in Part Plaintiffs'
Motion for An Adverse Inference
filed November 14, 2019 (Dkt. 263) .......................................................App.5

Opinion on Renewed Motion for Judgment as a Matter of Law and/or Motion for
New Trial or to Alter or Amend Judgment
filed November 14, 2019 (Dkt. 285) .......................................................App.6

Order Granting in Part and Denying in Part Motion for Judgment as a Matter of
Law and/or Motion for New Trial or to Alter or Amend Judgment
filed November 14, 2019 (Dkt. 286) .....................................................App.18

Order Denying Motion for Permanent Final Injunction
filed November 14, 2019 (Dkt. 287) .....................................................App.19

Modified Civil Judgment
filed November 14, 2019 (Dkt. 288) .....................................................App.21

Notice of Appeal
filed November 14, 2019 (Dkt. 290) .....................................................App.22

## VOLUME II

Complaint
filed November 14, 2019 (Dkt. 01) .......................................................App.24

Motion for Temporary Restraining Order and Preliminary Injunction
filed November 14, 2019 (Dkt. 06) .......................................................App.71

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order – Memorandum of Law
filed November 14, 2019 (Dkt. 06-01).................................................App.74

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order  - McCollum Declaration
filed November 14, 2019 (Dkt. 06-02) (part 1)...................................App.102

## VOLUME III

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order  - McCollum Declaration
filed November 14, 2019 (Dkt. 06-02) (part 2) ..................................App.500

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order  - Pernie Declaration
filed November 14, 2019 (Dkt. 06-03)................................................App.583

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order  - Caberra Declaration
filed November 14, 2019 (Dkt. 06-04)................................................App.601

Motion for Temporary Restraining Order and Preliminary Injunction Restraining
Order  - Proposed Order
filed November 14, 2019 (Dkt. 06-05)................................................App.633

Order Granting Temporary Restraining Order
filed November 14, 2019 (Dkt. 09) ...................................................App.636

Order Granting Defendants' Motion for an Extension of Time
filed November 14, 2019 (Dkt. 14) ...................................................App.639

Cross Motion to Dissolve Temporary Restraining Order
filed November 14, 2019 (Dkt. 16) ...................................................App.640

Cross Motion to Dissolve Temporary Restraining Order - Proposed Order
filed November 14, 2019 (Dkt. 16-01)................................................App.643

Cross Motion to Dissolve Temporary Restraining Order - Memorandum
filed November 14, 2019 (Dkt. 16-02)................................................App.644

Cross Motion to Dissolve Temporary Restraining Order - Exhibit A
filed November 14, 2019 (Dkt. 16-03)................................................App.660

Cross Motion to Dissolve Temporary Restraining Order - Exhibit B
filed November 14, 2019 (Dkt. 16-04)................................................App.666

Cross Motion to Dissolve Temporary Restraining Order - Exhibit C
filed November 14, 2019 (Dkt. 16-05)................................................App.681

Cross Motion to Dissolve Temporary Restraining Order - Exhibit D
filed November 14, 2019 (Dkt. 16-06)..................................................App.683

Cross Motion to Dissolve Temporary Restraining Order - Exhibit E
filed November 14, 2019 (Dkt. 16-07)..................................................App.685

Reply in support of Cross Motion to Dissolve Temporary Restraining Order
filed November 14, 2019 (Dkt. 17) .....................................................App.690

Reply in support of Cross Motion to Dissolve Temporary Restraining Order -
Declaration
filed November 14, 2019 (Dkt. 17-01)..................................................App.698

Reply in support of Cross Motion to Dissolve Temporary Restraining Order - COS
filed November 14, 2019 (Dkt. 17-02)..................................................App.708

Second Declaration of Benjamin McCollum
filed November 14, 2019 (Dkt. 21) .....................................................App.709

Second Declaration of Benjamin McCollum - Exhibit A
filed November 14, 2019 (Dkt. 21-01)..................................................App.714

Second Declaration of Benjamin McCollum - Exhibit B
filed November 14, 2019 (Dkt. 21-02) (part 1)...................................App.720

## **VOLUME IV**

Second Declaration of Benjamin McCollum - Exhibit B
filed November 14, 2019 (Dkt. 21-02) (Part 2)................................App.1000

Second Declaration of Benjamin McCollum - Exhibit C
filed November 14, 2019 (Dkt. 21-03)..................................................App.1205

Second Declaration of Benjamin McCollum - COS
filed November 14, 2019 (Dkt. 21-04)..................................................App.1211

Opposition to Plaintiffs' Motion for Preliminary Injunction
filed November 14, 2019 (Dkt. 22) .....................................................App.1212

Opposition to Plaintiffs' Motion for Preliminary Injunction - Exhibit A
filed November 14, 2019 (Dkt. 22-01)..................................................App.1221

Opposition to Plaintiffs' Motion for Preliminary Injunction - Exhibit B
  filed November 14, 2019 (Dkt. 22-02)..................................................App.1228

Declaration regarding Cross Motion to Dissolve Temporary Restraining Order
  filed November 14, 2019 (Dkt. 23) (part 1) ......................................App.1233

## **VOLUME V**

Declaration regarding Cross Motion to Dissolve Temporary Restraining Order
  filed November 14, 2019 (Dkt. 23) (part 2) ......................................App.1500

Order Denying Preliminary Injunction
  filed November 14, 2019 (Dkt. 24) ....................................................App.1833

Motion to Dismiss Complaint
  filed November 14, 2019 (Dkt. 25) ....................................................App.1835

Amended Complaint
  filed November 14, 2019 (Dkt. 26) ....................................................App.1901

## **VOLUME VI**

Transcript of Preliminary Injunction Hearing
  filed November 14, 2019 (Dkt. 27) ....................................................App.1949

Order Denying Defendants Motion to Dismiss as Moot
  filed November 14, 2019 (Dkt. 28) ....................................................App.2157

Motion to Dismiss Amended Complaint
  filed November 14, 2019 (Dkt. 29) ....................................................App.2158

Motion to Dismiss Amended Complaint - Memorandum
  filed November 14, 2019 (Dkt. 29-01)................................................App.2161

Motion to Dismiss Amended Complaint – Proposed Order
  filed November 14, 2019 (Dkt. 29-02)................................................App.2176

Motion to Dismiss Amended Complaint - Exhibit A
  filed November 14, 2019 (Dkt. 29-03)................................................App.2177

Opposition to Motion to Dismiss Amended Complaint
  filed November 14, 2019 (Dkt. 30) ....................................................App.2226

Reply in support of Motion to Dismiss Amended Complaint
    filed November 14, 2019 (Dkt. 33) ................................................App.2250

Answer to Amended Complaint
    filed November 14, 2019 (Dkt. 35) ................................................App.2259

Answer to Amended Complaint - Exhibit A
    filed November 14, 2019 (Dkt. 35-01)............................................App.2306

Motion to Dismiss Counterclaims
    filed November 14, 2019 (Dkt. 37) ................................................App.2312

Exhibit to Motion to Dismiss Counterclaims
    filed November 14, 2019 (Dkt. 38) ................................................App.2338

Amended Answer
    filed November 14, 2019 (Dkt. 41) ................................................App.2343

Order regarding Counterclaim Defendants' Motion to Dismiss
    filed November 14, 2019 (Dkt. 43) ................................................App.2363

Motion to Dismiss Amended Counterclaims
    filed November 14, 2019 (Dkt. 44) ................................................App.2364

## **VOLUME VII**

Opposition to Motion to Dismiss Amended Counterclaims
    filed November 14, 2019 (Dkt. 45) ................................................App.2389

Reply in support of Motion to Dismiss Amended Counterclaims
    filed November 14, 2019 (Dkt. 48) ................................................App.2408

Motion to Compel Document Production and Laptop Inspection
    filed November 14, 2019 (Dkt. 49) ................................................App.2417

Motion to Compel Document Production and Laptop Inspection - Exhibit A
    filed November 14, 2019 (Dkt. 49-01)............................................App.2432

Motion to Compel Document Production and Laptop Inspection - Exhibit B
    filed November 14, 2019 (Dkt. 49-02)............................................App.2472

Motion to Compel Document Production and Laptop Inspection - Exhibit C
    filed November 14, 2019 (Dkt. 49-03)............................................App.2486

Motion to Compel Document Production and Laptop Inspection - Exhibit D
filed November 14, 2019 (Dkt. 49-04).................................................App.2501

Motion to Compel Document Production and Laptop Inspection - Exhibit E
filed November 14, 2019 (Dkt. 49-05).................................................App.2545

Motion to Compel Document Production and Laptop Inspection - Exhibit F
filed November 14, 2019 (Dkt. 49-06).................................................App.2579

Motion to Compel Document Production and Laptop Inspection - Exhibit G
filed November 14, 2019 (Dkt. 49-07).................................................App.2582

Motion to Compel Document Production and Laptop Inspection - Exhibit H
filed November 14, 2019 (Dkt. 49-08).................................................App.2592

Cross Motion for Protective Order
filed November 14, 2019 (Dkt. 50) ....................................................App.2621

Response in Opposition to Cross Motion for Protective Order
filed November 14, 2019 (Dkt. 51) ....................................................App.2654

Protective Order
filed November 14, 2019 (Dkt. 58) ....................................................App.2670

Letter regarding Motion to Compel Document Production
filed November 14, 2019 (Dkt. 61) ....................................................App.2678

Letter regarding Motion to Compel Document Production - Exhibit A
filed November 14, 2019 (Dkt. 61-01).................................................App.2680

Order Regarding Motion to Compel
filed November 14, 2019 (Dkt. 62) ....................................................App.2684

Order Regarding Cross-Motion for Entry of Confidentiality Order
filed November 14, 2019 (Dkt. 63) ....................................................App.2685

Order Denying Motion to Dismiss
filed November 14, 2019 (Dkt. 64) ....................................................App.2686

Motion to Compel Inspection
filed November 14, 2019 (Dkt. 65) ....................................................App.2689

Answer to Amended Counterclaims
filed November 14, 2019 (Dkt. 66) ......................................................App.2750

Second Motion to Compel Discovery
filed November 14, 2019 (Dkt. 67) ......................................................App.2760

Second Motion to Compel Discovery - Exhibit A
filed November 14, 2019 (Dkt. 67-01) .................................................App.2793

Second Motion to Compel Discovery - Exhibit B
filed November 14, 2019 (Dkt. 67-02) .................................................App.2831

Second Motion to Compel Discovery - Exhibit C
filed November 14, 2019 (Dkt. 67-03) .................................................App.2833

Second Motion to Compel Discovery - Exhibit D
filed November 14, 2019 (Dkt. 67-04) .................................................App.2838

Second Motion to Compel Discovery - Exhibit E
filed November 14, 2019 (Dkt. 67-05) .................................................App.2845

Second Motion to Compel Discovery - Exhibit F
filed November 14, 2019 (Dkt. 67-06) .................................................App.2850

Second Motion to Compel Discovery - Exhibit G
filed November 14, 2019 (Dkt. 67-07) .................................................App.2860

Second Motion to Compel Discovery - Exhibit H
filed November 14, 2019 (Dkt. 67-08) .................................................App.2866

Second Motion to Compel Discovery - Exhibit I
filed November 14, 2019 (Dkt. 67-09) .................................................App.2868

Second Motion to Compel Discovery - Exhibit J
filed November 14, 2019 (Dkt. 67-10) .................................................App.2873

Second Motion to Compel Discovery - Exhibit K
filed November 14, 2019 (Dkt. 67-11) .................................................App.2879

## **VOLUME VIII**

Second Motion to Compel Discovery - Exhibit L
filed November 14, 2019 (Dkt. 67-12) .................................................App.2886

Second Motion to Compel Discovery - Exhibit M
    filed November 14, 2019 (Dkt. 67-13)..................................App.2896

Second Motion to Compel Discovery - Exhibit N
    filed November 14, 2019 (Dkt. 67-14)..................................App.2898

Second Motion to Compel Discovery - Exhibit O
    filed November 14, 2019 (Dkt. 67-15)..................................App.2905

Opposition to Motion to Compel Inspection
    filed November 14, 2019 (Dkt. 68) ....................................App.2956

Opposition to Motion to Compel Inspection - Exhibit A
    filed November 14, 2019 (Dkt. 68-01)..................................App.2972

Opposition to Motion to Compel Inspection - Exhibit B
    filed November 14, 2019 (Dkt. 68-02)..................................App.2979

Opposition to Motion to Compel Inspection - Exhibit C
    filed November 14, 2019 (Dkt. 68-03)..................................App.2987

Order Regarding Motion to Compel Inspection
    filed November 14, 2019 (Dkt. 70) ....................................App.2995

Response in Opposition to Second Motion to Compel Discovery
    filed November 14, 2019 (Dkt. 72) ....................................App.2996

Reply in Support of Second Motion to Compel Discovery
    filed November 14, 2019 (Dkt. 73) ....................................App.3026

Reply in Support of Second Motion to Compel Discovery - Exhibit A
    filed November 14, 2019 (Dkt. 73-01)..................................App.3028

Order regarding Second Motion to Compel Discovery
    filed November 14, 2019 (Dkt. 75) ....................................App.3032

Motion to Compel De-Designations
    filed November 14, 2019 (Dkt. 84) ....................................App.3034

Motion to Compel De-Designations - Exhibit A
    filed November 14, 2019 (Dkt. 84-01)..................................App.3051

Motion to Compel De-Designations - Exhibit B
    filed November 14, 2019 (Dkt. 84-02)................................................App.3060

Motion to Compel De-Designations - Exhibit C
    filed November 14, 2019 (Dkt. 84-03)................................................App.3072

Motion to Compel De-Designations - Exhibit D
    filed November 14, 2019 (Dkt. 84-04)................................................App.3078

Motion to Compel De-Designations - Proposed Order
    filed November 14, 2019 (Dkt. 84-05)................................................App.3082

Second Motion to Enforce 2/2/2021 Order
    filed November 14, 2019 (Dkt. 86) ....................................................App.3083

Opposition to Second Motion to Enforce Order
    filed November 14, 2019 (Dkt. 87) ....................................................App.3139

Opposition to Second Motion to Enforce Order - Exhibit A
    filed November 14, 2019 (Dkt. 87-01)................................................App.3155

Opposition to Second Motion to Enforce Order - Exhibit B
    filed November 14, 2019 (Dkt. 87-02)................................................App.3161

Opposition to Second Motion to Enforce Order - Exhibit C
    filed November 14, 2019 (Dkt. 87-03)................................................App.3165

Opposition to Second Motion to Enforce Order - Exhibit D
    filed November 14, 2019 (Dkt. 87-04)................................................App.3170

Opposition to Second Motion to Enforce Order - Exhibit E
    filed November 14, 2019 (Dkt. 87-05)................................................App.3177

Opposition to Second Motion to Enforce Order - Exhibit F
    filed November 14, 2019 (Dkt. 87-06)................................................App.3184

Opposition to Second Motion to Enforce Order - Exhibit G
    filed November 14, 2019 (Dkt. 87-07)................................................App.3193

Opposition to Second Motion to Enforce Order - Exhibit H
    filed November 14, 2019 (Dkt. 87-08)................................................App.3201

Opposition to Second Motion to Enforce Order - Exhibit I
filed November 14, 2019 (Dkt. 87-09)................................................App.3212

Order regarding Section Motion to Enforce Order
filed November 14, 2019 (Dkt. 88) ...................................................App.3219

Opposition to Motion to Compel De-Designations
filed November 14, 2019 (Dkt. 89) ...................................................App.3220

Reply in Support of Motion to Compel De-Designations
filed November 14, 2019 (Dkt. 90) ...................................................App.3228

Order Regarding Motion to Compel De-Designations
filed November 14, 2019 (Dkt. 91) ...................................................App.3232

Letter dated September 2, 2021
filed November 14, 2019 (Dkt. 94) ...................................................App.3233

Letter dated September 2, 2021 - Exhibits
filed November 14, 2019 (Dkt. 94-01)................................................App.3237

Third Motion to Compel Discovery
filed November 14, 2019 (Dkt. 111) .................................................App.3323

Third Motion to Compel Discovery - Exhibit A
filed November 14, 2019 (Dkt. 111-01)..............................................App.3345

Third Motion to Compel Discovery - Exhibit B
filed November 14, 2019 (Dkt. 111-02)..............................................App.3376

## VOLUME IX

Third Motion to Compel Discovery - Exhibit C
filed November 14, 2019 (Dkt. 111-03)..............................................App.3381

Third Motion to Compel Discovery - Exhibit D
filed November 14, 2019 (Dkt. 111-04)..............................................App.3391

Third Motion to Compel Discovery - Exhibit E
filed November 14, 2019 (Dkt. 111-05)..............................................App.3395

Third Motion to Compel Discovery - Exhibit F
filed November 14, 2019 (Dkt. 111-06)..............................................App.3402

Third Motion to Compel Discovery - Exhibit G
  filed November 14, 2019 (Dkt. 111-07)..............................................App.3414

Opposition to Third Motion to Compel Discovery
  filed November 14, 2019 (Dkt. 115) ...................................................App.3426

Order Regarding Third Motion to Compel Discovery
  filed November 14, 2019 (Dkt. 119) ...................................................App.3453

Reply in support of Third Motion to Compel Discovery
  filed November 14, 2019 (Dkt. 120) ...................................................App.3454

Defendants' Motion for Summary Judgment
  filed November 14, 2019 (Dkt. 123) ...................................................App.3460

Defendants' Motion for Summary Judgment - Proposed Order
  filed November 14, 2019 (Dkt. 123-01)..............................................App.3462

Defendants' Motion for Summary Judgment - Brief
  filed November 14, 2019 (Dkt. 123-02)..............................................App.3463

Defendants' Motion for Summary Judgment - Statement of Undisputed Material
  Facts
  filed November 14, 2019 (Dkt. 123-03)..............................................App.3509

Defendants' Motion for Summary Judgment - Exhibit A
  filed November 14, 2019 (Dkt. 123-04)..............................................App.3530

Defendants' Motion for Summary Judgment - Exhibit B
  filed November 14, 2019 (Dkt. 123-05)..............................................App.3583

Defendants' Motion for Summary Judgment - Exhibit C
  filed November 14, 2019 (Dkt. 123-06)..............................................App.3592

Defendants' Motion for Summary Judgment - Exhibit D
  filed November 14, 2019 (Dkt. 123-07)..............................................App.3599

Defendants' Motion for Summary Judgment - Exhibit E
  filed November 14, 2019 (Dkt. 123-08)..............................................App.3624

Defendants' Motion for Summary Judgment - Exhibit F
  filed November 14, 2019 (Dkt. 123-09)..............................................App.3648

Defendants' Motion for Summary Judgment - Exhibit G
    filed November 14, 2019 (Dkt. 123-10)............................................App.3649

Defendants' Motion for Summary Judgment - Exhibit H
    filed November 14, 2019 (Dkt. 123-11)............................................App.3655

Defendants' Motion for Summary Judgment - Exhibit I
    filed November 14, 2019 (Dkt. 123-12)............................................App.3695

Defendants' Motion for Summary Judgment - Exhibit J
    filed November 14, 2019 (Dkt. 123-13)............................................App.3697

Defendants' Motion for Summary Judgment - Exhibit K
    filed November 14, 2019 (Dkt. 123-14)............................................App.3779

Defendants' Motion for Summary Judgment - Exhibit L
    filed November 14, 2019 (Dkt. 123-15)............................................App.3780

Defendants' Motion for Summary Judgment - Exhibit M
    filed November 14, 2019 (Dkt. 123-16)............................................App.3781

Defendants' Motion for Summary Judgment - Exhibit N
    filed November 14, 2019 (Dkt. 123-17)............................................App.3783

Defendants' Motion for Summary Judgment - Exhibit O
    filed November 14, 2019 (Dkt. 123-18)............................................App.3785

Defendants' Motion for Summary Judgment - Exhibit P
    filed November 14, 2019 (Dkt. 123-19)............................................App.3800

Defendants' Motion for Summary Judgment - Exhibit Q
    filed November 14, 2019 (Dkt. 123-20)............................................App.3816

Defendants' Motion for Summary Judgment - Exhibit R
    filed November 14, 2019 (Dkt. 123-21)............................................App.3824

Defendants' Motion for Summary Judgment - Exhibit S
    filed November 14, 2019 (Dkt. 123-22)............................................App.3857

## **VOLUME X**

Defendants' Motion for Summary Judgment - Exhibit T
    filed November 14, 2019 (Dkt. 123-23)............................................App.3858

Defendants' Motion for Summary Judgment - Exhibit U
    filed November 14, 2019 (Dkt. 123-24)..............................................App.3883

Defendants' Motion for Summary Judgment - Exhibit V
    filed November 14, 2019 (Dkt. 123-25)..............................................App.3949

Defendants' Motion for Summary Judgment - Exhibit W
    filed November 14, 2019 (Dkt. 123-26)..............................................App.3958

Defendants' Motion for Summary Judgment - Exhibit X
    filed November 14, 2019 (Dkt. 123-27)..............................................App.3959

Defendants' Motion for Summary Judgment – Certificate of Service
    filed November 14, 2019 (Dkt. 123-28)..............................................App.3960

Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 124) ................................................App.3961

Blume Declaration in support of Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 124-01)..............................................App.3964

Exhibits A to E in support of Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 124-02)..............................................App.3966

Exhibits K to O in support of Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 124-04)..............................................App.4029

Memorandum in support of Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 124-07)..............................................App.4059

Opposition to Plaintiffs' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 130) ................................................App.4088

Opposition to Plaintiffs' Motion for Summary Judgment - Exhibit A
    filed November 14, 2019 (Dkt. 130-01)..............................................App.4120

Opposition to Plaintiffs' Motion for Summary Judgment - Exhibit B
    filed November 14, 2019 (Dkt. 130-02)..............................................App.4146

Opposition to Plaintiffs' Motion for Summary Judgment - Exhibit C
    filed November 14, 2019 (Dkt. 130-03)..............................................App.4150

Opposition to Plaintiffs' Motion for Summary Judgment - Exhibit D
  filed November 14, 2019 (Dkt. 130-04)..............................................App.4153

Opposition to Defendants' Motion for Summary Judgment
  filed November 14, 2019 (Dkt. 131) ................................................App.4159

Opposition to Defendants' Motion for Summary Judgment Exhibits 1-12
  filed November 14, 2019 (Dkt. 131-01) (part 1)...............................App.4230

## **VOLUME XI**

Opposition to Defendants' Motion for Summary Judgment Exhibits 1-12
  filed November 14, 2019 (Dkt. 131-01) (part 2)...............................App.4350

Opposition to Defendants' Motion for Summary Judgment Exhibits 13-18
  filed November 14, 2019 (Dkt. 131-02)............................................App.4415

Opposition to Defendants' Motion for Summary Judgment Exhibits 19-24
  filed November 14, 2019 (Dkt. 131-03)............................................App.4458

## **VOLUME XII**

Opposition to Defendants' Motion for Summary Judgment Exhibits 25-30
  filed November 14, 2019 (Dkt. 131-04) (part 1)...............................App.4821

## **VOLUME XIII**

Opposition to Defendants' Motion for Summary Judgment Exhibits 25-30
  filed November 14, 2019 (Dkt. 131-04) (part 2)...............................App.5320

Opposition to Defendants' Motion for Summary Judgment Exhibits 31-55
  filed November 14, 2019 (Dkt. 131-05)............................................App.5436

Opposition to Defendants' Motion for Summary Judgment Exhibits 56-66
  filed November 14, 2019 (Dkt. 131-06)............................................App.5523

Reply in Support of Defendants' Motion for Summary Judgment
  filed November 14, 2019 (Dkt. 133) ................................................App.5598

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit A
  filed November 14, 2019 (Dkt. 133-01)............................................App.5642

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit B
  filed November 14, 2019 (Dkt. 133-02)............................................App.5658

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit C
filed November 14, 2019 (Dkt. 133-03)..............................................App.5664

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit D
filed November 14, 2019 (Dkt. 133-04)..............................................App.5668

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit E
filed November 14, 2019 (Dkt. 133-05)..............................................App.5678

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit F
filed November 14, 2019 (Dkt. 133-06)..............................................App.5685

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit G
filed November 14, 2019 (Dkt. 133-07)..............................................App.5702

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit H
filed November 14, 2019 (Dkt. 133-08)..............................................App.5709

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit I
filed November 14, 2019 (Dkt. 133-09)..............................................App.5717

Reply in Support of Defendants' Motion for Summary Judgment - Exhibit J
filed November 14, 2019 (Dkt. 133-10)..............................................App.5730

Reply in support of Plaintiffs' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 135) ..............................................App.5732

Opinion regarding Motions for Summary Judgment
filed November 14, 2019 (Dkt. 139) ..............................................App.5746

Order Regarding Plaintiffs' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 140) ..............................................App.5766

Order regarding Defendants' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 141) ..............................................App.5767

Defendants' Pretrial Memorandum
filed November 14, 2019 (Dkt. 143) ..............................................App.5772

## VOLUME XIV

Plaintiffs' Pretrial Memorandum
filed November 14, 2019 (Dkt. 145) ..............................................App.5803

Motion in Limine Regarding External Hard Drive
filed November 14, 2019 (Dkt. 163) ..................................................App.5833

Motion in Limine Regarding External Hard Drive - Exhibit A
filed November 14, 2019 (Dkt. 163-01)............................................App.5842

Motion in Limine Regarding Contract Interpretation
filed November 14, 2019 (Dkt. 164) ..................................................App.5848

Motion in Limine Regarding Contract Interpretation - Exhibit A
filed November 14, 2019 (Dkt. 164-01)............................................App.5857

Motion in Limine to Preclude Inference of Spoliation
filed November 14, 2019 (Dkt. 166) ..................................................App.5878

Motion in Limine to Preclude Inference of Spoliation - Exhibit A
filed November 14, 2019 (Dkt. 166-01)............................................App.5887

Motion in Limine to Preclude Inference of Spoliation - Exhibit B
filed November 14, 2019 (Dkt. 166-02)............................................App.5897

Motion in Limine Regarding Single Mother
filed November 14, 2019 (Dkt. 167) ..................................................App.5902

Motion in Limine Regarding Entitlement to Commissions
filed November 14, 2019 (Dkt. 168) ..................................................App.5910

Plaintiffs' Proposed Jury Instructions
filed November 14, 2019 (Dkt. 175) ..................................................App.5918

Opposition to Motion in Limine Regarding Entitlement to Commissions
filed November 14, 2019 (Dkt. 180) ..................................................App.5979

Opposition to Motion in Limine Regarding Single Mother
filed November 14, 2019 (Dkt. 184) ..................................................App.5983

Opposition to Motion in Limine Regarding External Hard Drive
filed November 14, 2019 (Dkt. 186) ..................................................App.5991

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit A
filed November 14, 2019 (Dkt. 186-01)............................................App.6016

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit B
filed November 14, 2019 (Dkt. 186-02)..............................................App.6020

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit C
filed November 14, 2019 (Dkt. 186-03)..............................................App.6025

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit D
filed November 14, 2019 (Dkt. 186-04)..............................................App.6027

Opposition to Motion in Limine Regarding Contract Interpretation
filed November 14, 2019 (Dkt. 192) .................................................App.6030

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit A
filed November 14, 2019 (Dkt. 192-01)..............................................App.6047

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit B
filed November 14, 2019 (Dkt. 192-02)..............................................App.6053

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit C
filed November 14, 2019 (Dkt. 192-03)..............................................App.6057

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit D
filed November 14, 2019 (Dkt. 192-04)..............................................App.6060

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit E
filed November 14, 2019 (Dkt. 192-05)..............................................App.6061

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit F
filed November 14, 2019 (Dkt. 192-06)..............................................App.6062

Opposition to Motion in Limine Regarding Contract Interpretation - Exhibit G
filed November 14, 2019 (Dkt. 192-07)..............................................App.6065

Opposition to Motion in Limine to Preclude Inference of Spoliation
filed November 14, 2019 (Dkt. 193) .................................................App.6067

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit A
filed November 14, 2019 (Dkt. 193-01)..............................................App.6101

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit B
filed November 14, 2019 (Dkt. 193-02)..............................................App.6137

Reply in support of Motion in Limine Regarding Contract Interpretation
    filed November 14, 2019 (Dkt. 204) ...................................................App.6140

Reply in support of Motion in Limine to Preclude Inference of Spoliation
    filed November 14, 2019 (Dkt. 208) ...................................................App.6143

Reply in support of Motion in Limine Regarding External Hard Drive
    filed November 14, 2019 (Dkt. 209) ...................................................App.6158

Reply in support of Motion in Limine Regarding Single Mother
    filed November 14, 2019 (Dkt. 211) ...................................................App.6178

Order regarding Motion in Limine Regarding External Hard Drive
    filed November 14, 2019 (Dkt. 215) ...................................................App.6183

Order Regarding Motion in Limine Regarding Contract Interpretation
    filed November 14, 2019 (Dkt. 216) ...................................................App.6184

Order Regarding Motion in Limine to Preclude Inference of Spoliation
    filed November 14, 2019 (Dkt. 217) ...................................................App.6185

Order regarding Motion in Limine Regarding Single Mother
    filed November 14, 2019 (Dkt. 218) ...................................................App.6186

Order Regarding Motion in Limine Regarding Entitlement to Commissions
    filed November 14, 2019 (Dkt. 219) ...................................................App.6187

Motion for Hearing on Evidentiary Objections
    filed November 14, 2019 (Dkt. 233) ...................................................App.6188

Motion for Hearing on Evidentiary Objections - Exhibit A
    filed November 14, 2019 (Dkt. 233-01) .............................................App.6199

Motion for Hearing on Evidentiary Objections - Exhibit B
    filed November 14, 2019 (Dkt. 233-02) .............................................App.6213

Opposition to Motion for Hearing on Evidentiary Objections
    filed November 14, 2019 (Dkt. 235) ...................................................App.6216

Motion for Sanctions – Adverse Inference Instruction
    filed November 14, 2019 (Dkt. 236) ...................................................App.6226

Order Precluding other Employment Discrimination Claims
filed November 14, 2019 (Dkt. 237) .................................................App.6259

Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 248) .................................................App.6260

Order Regarding Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 257) .................................................App.6285

Judgment
filed November 14, 2019 (Dkt. 265) .................................................App.6286

Motion for Permanent Final Injunction
filed November 14, 2019 (Dkt. 266) .................................................App.6287

## **VOLUME XV**

Opposition to Motion for Permanent Final Injunction
filed November 14, 2019 (Dkt. 272) .................................................App.6325

Renewed Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 273) .................................................App.6366

Renewed Motion for Judgment as a Matter of Law - Memorandum
filed November 14, 2019 (Dkt. 273-01).............................................App.6367

Renewed Motion for Judgment as a Matter of Law - Proposed Order
filed November 14, 2019 (Dkt. 273-04).............................................App.6417

Renewed Motion for Judgment as a Matter of Law – Certificate of Service
filed November 14, 2019 (Dkt. 273-05).............................................App.6418

Opposition to Renewed Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 276) .................................................App.6419

Motion for Leave to file Reply in Support of Motion for
Permanent Final Injunction
filed November 14, 2019 (Dkt. 277) .................................................App.6472

Motion for Leave to file Reply in Support of Motion for
Permanent Final Injunction - Proposed Order
filed November 14, 2019 (Dkt. 277-01).............................................App.6476

Motion for Leave to file Reply in Support of Motion for Permanent Final Injunction - Reply
filed November 14, 2019 (Dkt. 277-02) ............................................App.6477

Opposition to Motion for Leave to file Reply in Support of Motion for Permanent Final Injunction
filed November 14, 2019 (Dkt. 278) ................................................App.6521

Reply in Support of Motion for Entry of Permanent Final Injunction
filed November 14, 2019 (Dkt. 280) ................................................App.6527

Motion for Leave to file Reply in support of Renewed Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 281) ................................................App.6570

Motion for Leave to file Reply in support of Renewed Motion for Judgment as a Matter of Law - Reply
filed November 14, 2019 (Dkt. 281-01) ............................................App.6574

Motion for Leave to file Reply in support of Renewed Motion for Judgment as a Matter of Law – Certificate of Service
filed November 14, 2019 (Dkt. 281-02) ............................................App.6614

Opposition to Motion for Leave to file Reply in support of Renewed Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 282) ................................................App.6615

Reply in support of Plaintiffs' Renewed Motion for Judgment as a Matter of Law
filed November 14, 2019 (Dkt. 284) ................................................App.6620

Trial Transcript - Day 2 - April 20, 2023 ................................................App.6659

## VOLUME XVI

Trial Transcript - Day 3 - April 21, 2023 ................................................App.6900

## VOLUME XVII

Trial Transcript - Day 4 - April 24, 2023 ................................................App.7190

## VOLUME XVIII

Trial Transcript - Day 5 - April 25, 2023 ................................................App.7479

## VOLUME XIX

Trial Transcript - Day 6 - April 26, 2023 ...................................................App.7758

## VOLUME XX

Trial Transcript - Day 7 - April 27, 2023 ...................................................App.8061

## VOLUME XXI

Trial Transcript - Day 8 - April 28, 2023 ...................................................App.8380

## VOLUME XXII

Trial Transcript - Day 9 - May 1, 2023...................................................App.8718

Trial Transcript - Day 10 - May 2, 2023...................................................App.8965

Defendants' Exhibit 1 ...................................................App.9121

Defendants' Exhibit 2 ...................................................App.9122

Defendants' Exhibit 3 ...................................................App.9125

Defendants' Exhibit 4 ...................................................App.9128

Defendants' Exhibit 5 ...................................................App.9130

Defendants' Exhibit 6 ...................................................App.9131

Defendants' Exhibit 7 ...................................................App.9139

Defendants' Exhibit 8 ...................................................App.9145

Defendants' Exhibit 16 ...................................................App.9147

Defendants' Exhibit 17 ...................................................App.9149

Defendants' Exhibit 18 ...................................................App.9151

Defendants' Exhibit 19 ...................................................App.9157

Defendants' Exhibit 22 ...................................................App.9176

Defendants' Exhibit 30 ...................................................App.9179

Defendants' Exhibit 32 ...................................................................App.9181

Defendants' Exhibit 42 ...................................................................App.9185

Defendants' Exhibit 49 ...................................................................App.9186

Defendants' Exhibit 51 ...................................................................App.9188

Defendants' Exhibit 58 ...................................................................App.9193

## **VOLUME XXIII**

Defendants' Exhibit 62 ...................................................................App.9194

Defendants' Exhibit 89 ...................................................................App.9527

Defendants' Exhibit 93 ...................................................................App.9530

Defendants' Exhibit 95 ...................................................................App.9595

Defendants' Exhibit 110 .................................................................App.9597

Defendants' Exhibit 113 .................................................................App.9615

Defendants' Exhibit 121 .................................................................App.9616

Plaintiffs' Exhibit 003 ...................................................................App.9617

## **VOLUME XXIV**

Plaintiffs' Exhibit 004 ...................................................................App.9622

## **VOLUME XXV**

Plaintiffs' Exhibit 006 ..................................................................App.10064

Plaintiffs' Exhibit 007 ..................................................................App.10549

## **VOLUME XXVI**

Plaintiffs' Exhibit 008 ..................................................................App.10555

## **VOLUME XXVII**

Plaintiffs' Exhibit 013 ..................................................................App.10844

**VOLUME XXVIII**

Plaintiffs' Exhibit 017.................................................................App.11133

Plaintiffs' Exhibit 018 (part 1).................................................App.11223

**VOLUME XXIX**

Plaintiffs' Exhibit 018 (part 2).................................................App.11630

**VOLUME XXX**

Plaintiffs' Exhibit 018 (part 3).................................................App.12129

Plaintiffs' Exhibit 019 (part 1).................................................App.12150

**VOLUME XXXI**

Plaintiffs' Exhibit 019 (part 2).................................................App.12625

**VOLUME XXXII**

Plaintiffs' Exhibit 019 (part 3).................................................App.13120

**VOLUME XXXIII**

Plaintiffs' Exhibit 019 (part 4).................................................App.13615

**VOLUME XXXIV**

Plaintiffs' Exhibit 019 (part 5).................................................App.14110

Plaintiffs' Exhibit 021.............................................................App.14366

**VOLUME XXXV**

Plaintiffs' Exhibit 023.............................................................App.14455

Plaintiffs' Exhibit 024.............................................................App.14886

Plaintiffs' Exhibit 025.............................................................App.14903

Plaintiffs' Exhibit 026a...........................................................App.14942

## **VOLUME XXXVI**

Plaintiffs' Exhibit 026b.................................................................App.14949

Plaintiffs' Exhibit 027...................................................................App.14957

Plaintiffs' Exhibit 028...................................................................App.14961

Plaintiffs' Exhibit 031...................................................................App.14966

Plaintiffs' Exhibit 035...................................................................App.14967

Plaintiffs' Exhibit 036...................................................................App.14968

Plaintiffs' Exhibit 038...................................................................App.14969

Plaintiffs' Exhibit 040...................................................................App.14971

Plaintiffs' Exhibit 041...................................................................App.15019

Plaintiffs' Exhibit 042...................................................................App.15020

Plaintiffs' Exhibit 043...................................................................App.15023

Plaintiffs' Exhibit 044...................................................................App.15025

Plaintiffs' Exhibit 045...................................................................App.15028

Plaintiffs' Exhibit 050...................................................................App.15029

Plaintiffs' Exhibit 051...................................................................App.15030

Plaintiffs' Exhibit 052...................................................................App.15031

Plaintiffs' Exhibit 053...................................................................App.15032

Plaintiffs' Exhibit 054...................................................................App.15033

Plaintiffs' Exhibit 055...................................................................App.15034

Plaintiffs' Exhibit 056...................................................................App.15036

Plaintiffs' Exhibit 057...................................................................App.15038

Plaintiffs' Exhibit 058...................................................................App.15042

Plaintiffs' Exhibit 059 ................................................................................App.15049

Plaintiffs' Exhibit 060 ................................................................................App.15051

Plaintiffs' Exhibit 061 ................................................................................App.15073

Plaintiffs' Exhibit 062 ................................................................................App.15074

Plaintiffs' Exhibit 063 ................................................................................App.15075

Plaintiffs' Exhibit 064 ................................................................................App.15076

Plaintiffs' Exhibit 065 ................................................................................App.15078

Plaintiffs' Exhibit 066 ................................................................................App.15081

Plaintiffs' Exhibit 067 ................................................................................App.15084

Plaintiffs' Exhibit 068 ................................................................................App.15086

Plaintiffs' Exhibit 069 ................................................................................App.15088

Plaintiffs' Exhibit 073 ................................................................................App.15089

Plaintiffs' Exhibit 105 ................................................................................App.15091

Plaintiffs' Exhibit 116 ................................................................................App.15092

Plaintiffs' Exhibit 117 ................................................................................App.15302

Plaintiffs' Exhibit 119 ................................................................................App.15306

## **VOLUME XXXVII**

Plaintiffs' Exhibit 125 ................................................................................App.15476

Plaintiffs' Exhibit 139 ................................................................................App.15477

Plaintiffs' Exhibit 154 ................................................................................App.15480

Plaintiffs' Exhibit 156 ................................................................................App.15481

Plaintiffs' Exhibit 158 ................................................................................App.15482

Plaintiffs' Exhibit 317 ................................................................................App.15484

Plaintiffs' Exhibit 318 ................................................................App.15485

Plaintiffs' Exhibit 332 ................................................................App.15490

Plaintiffs' Exhibit 334 ................................................................App.15492

Plaintiffs' Exhibit 343 ................................................................App.15494

Plaintiffs' Exhibit 354 ................................................................App.15497

Plaintiffs' Exhibit 365 ................................................................App.15530

Plaintiffs' Exhibit 366 ................................................................App.15532

Plaintiffs' Exhibit 367 ................................................................App.15538

Plaintiffs' Exhibit 369 ................................................................App.15540

Plaintiffs' Exhibit 371 ................................................................App.15541

Plaintiffs' Exhibit 372 ................................................................App.15543

Plaintiffs' Exhibit 373 ................................................................App.15544

Plaintiffs' Exhibit 376 ................................................................App.15545

Plaintiffs' Exhibit 379 ................................................................App.15593

## **VOLUME XXXVIII (SEALED)**

Exhibits Q, T, and Z to Plaintiffs' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 125-00) ........................................App.15610

Exhibit F to Defendants' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 126-00) ........................................App.15642

Exhibit K to Defendants' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 126-01) ........................................App.15665

Exhibit L to Defendants' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 126-02) ........................................App.15671

Exhibit S to Defendants' Motion for Summary Judgment
filed November 14, 2019 (Dkt. 126-03) ........................................App.15674

Exhibit W to Defendants' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 126-04)............................................App.15874

Exhibit X to Defendants' Motion for Summary Judgment
    filed November 14, 2019 (Dkt. 126-05)............................................App.15879

Opposition to Defendant's Motion for Summary Judgment (Unredacted)
    filed December 17, 2021 (Dkt. 131-00) ..........................................App.15909

Opposition to Defendant's Motion for Summary Judgment - Ex. 12
    filed December 17, 2021 (Dkt. 131-01) ..........................................App.15980

Opposition to Defendant's Motion for Summary Judgment - Exs. 31-36
    filed December 17, 2021 (Dkt. 131-02) ..........................................App.15992

Opposition to Defendant's Motion for Summary Judgment - Exs. 38-41
    filed December 17, 2021 (Dkt. 131-03) ..........................................App.16073

## **VOLUME XXXIX (SEALED)**

Opposition to Defendant's Motion for Summary Judgment - Exs. 44-46
    filed December 17, 2021 (Dkt. 131-04) ..........................................App.16097

Opposition to Defendant's Motion for Summary Judgment - Exs. 48-53
    filed December 17, 2021 (Dkt. 131-05) ..........................................App.16335

Opposition to Defendant's Motion for Summary Judgment - Ex. 60
    filed December 17, 2021 (Dkt. 131-06) ..........................................App.16368

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit E
    filed November 14, 2019 (Dkt. 197-00)..........................................App.16426

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit F
    filed November 14, 2019 (Dkt. 197-00)..........................................App.16428

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit G
    filed November 14, 2019 (Dkt. 197-00)..........................................App.16431

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit H
    filed November 14, 2019 (Dkt. 197-00)..........................................App.16435

Opposition to Motion in Limine Regarding External Hard Drive - Exhibit I
    filed November 14, 2019 (Dkt. 197-00)..........................................App.16437

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit C
filed November 14, 2019 (Dkt. 196-00)............................................App.16441

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit D
filed November 14, 2019 (Dkt. 196-00)............................................App.16444

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit E
filed November 14, 2019 (Dkt. 196-00)............................................App.16447

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit F
filed November 14, 2019 (Dkt. 196-00)............................................App.16451

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit G
filed November 14, 2019 (Dkt. 196-00)............................................App.16459

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit H
filed November 14, 2019 (Dkt. 196-00)............................................App.16524

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit I
filed November 14, 2019 (Dkt. 196-00)............................................App.16528

Opposition to Motion in Limine to Preclude Inference of Spoliation - Exhibit J
filed November 14, 2019 (Dkt. 196-00)............................................App.16573

Renewed Motion for Judgment as a Matter of Law - Exhibit A
filed November 14, 2019 (Dkt. 275-00)............................................App.16575

Renewed Motion for Judgment as a Matter of Law - Exhibit B
filed November 14, 2019 (Dkt. 275-01)............................................App.16580

## VOLUME XL (SEALED)

Motion for Judgment as a Matter of Law - Exhibit A
filed November 14, 2019 (Dkt. 255-00)............................................App.16582

Verdict Sheet
filed November 14, 2019 (Dkt. 262-00)............................................App.16599

Defendants' Exhibit 11 .............................................................App.16604

Defendants' Exhibit 25 .............................................................App.16685

Defendants' Exhibit 29 .............................................................App.16690

Defendants' Exhibit 36 ....................................................................App.16694

Defendants' Exhibit 41 ....................................................................App.16699

Defendants' Exhibit 43 ....................................................................App.16701

Defendants' Exhibit 50 ....................................................................App.16705

Defendants' Exhibit 88 ....................................................................App.16762

Defendants' Exhibit 91 ....................................................................App.16764

Defendants' Exhibit 91-A ...............................................................App.16797

Defendants' Exhibit 91-B ...............................................................App.16810

Defendants' Exhibit 94 ....................................................................App.16812

Plaintiffs' Exhibit 046....................................................................App.16825

Plaintiffs' Exhibit 047....................................................................App.16826

Plaintiffs' Exhibit 048....................................................................App.16827

Plaintiffs' Exhibit 049....................................................................App.16829

Plaintiffs' Exhibit 071....................................................................App.16830

Plaintiffs' Exhibit 078....................................................................App.16887

Plaintiffs' Exhibit 093....................................................................App.16888

Plaintiffs' Exhibit 097....................................................................App.16890

Plaintiffs' Exhibit 118....................................................................App.16897

Plaintiffs' Exhibit 128....................................................................App.16926

Plaintiffs' Exhibit 129....................................................................App.16931

Plaintiffs' Exhibit 201 ...................................................................App.16939

Plaintiffs' Exhibit 202....................................................................App.16942

Plaintiffs' Exhibit 218....................................................................App.16945

Plaintiffs' Exhibit 219 ...................................................................App.16949

Plaintiffs' Exhibit 243 ...................................................................App.16951

Plaintiffs' Exhibit 247 ...................................................................App.16956

## **<u>VOLUME XLI (SEALED)</u>**

Plaintiffs' Exhibit 252 ...................................................................App.16957

Plaintiffs' Exhibit 261 ...................................................................App.17135

Plaintiffs' Exhibit 313 ...................................................................App.17146

Plaintiffs' Exhibit 319 ...................................................................App.17162

Plaintiffs' Exhibit 355 ...................................................................App.17165

Plaintiffs' Exhibit 368 ...................................................................App.17169

Plaintiffs' Exhibit 378 ...................................................................App.17250

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE AMERICAN INSTITUTE FOR | : | CIVIL ACTION |
| CHARTERED PROPERTY | : | |
| CASUALTY UNDERWRITERS, | : | NO. 19-5369 |
| d/b/a THE INSTITUTES, *et al.* | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| SYDNEY POSNER, *et al.* | : | |
| *Defendants* | : | |

# ORDER

**AND NOW**, this 27th day of April 2020, upon consideration of Defendants' *motion to partially dismiss*, [ECF 29], Plaintiffs' response in opposition thereto, [ECF 30], Defendants' reply, [ECF 33], and the allegations in the amended complaint, [ECF 26], it is hereby **ORDERED** that:

1. Defendants' motion to partially dismiss is **GRANTED** with respect to the following:

   a. Count III (unfair competition); [1]

---

[1] In their amended complaint, Plaintiffs assert eight claims against their former employee, Defendant Sydney Posner ("Posner"), and her current employer, Defendant The Claims Xchange, Inc. ("Xchange"), premised primarily on Posner's alleged unlawful taking, use, and distribution of confidential information belonging to Plaintiffs. At Count III, Plaintiffs allege that Defendants engaged in unfair competition. Although no Pennsylvania appellate court has formally recognized the common law tort of unfair competition, several lower state courts have relied on the Restatement (3d) of Unfair Competition § 1 to define its elements. *See Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 679 (E.D. Pa. 2018) (collecting cases). This Court finds those lower state court's rulings persuasive, and the United States Court of Appeals for the Third Circuit ("Third Circuit") has expressly assumed, without deciding, that the Pennsylvania Supreme Court would adopt the Restatement (3d) of Unfair Competition. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 227 & n.29 (3d Cir. 2009). Under § 1 of the Restatement, to assert a claim for unfair competition, a plaintiff must allege facts sufficient to plausibly show that: (1) the defendant misappropriated trade secrets or confidential information; and (2) the conduct caused harm to the plaintiff's commercial relations. *Teva*, 291 F. Supp. 3d at 679 (citing Restatement (3d) of Unfair Competition § 1).

In their motion to dismiss, Defendants argue that Plaintiffs have failed to allege facts to show that Plaintiffs suffered the requisite harm to Plaintiffs' commercial relations. When considering a motion to

b.  Count IV (tortious interference with contractual relations); [2] and

_____

dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id*. at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts."  *Id.* (internal citations omitted).

In response to Defendants' motion and to meet their pleading burden with respect to the requisite harm, Plaintiffs point solely to their bald allegations that Defendants have used Plaintiffs' confidential information to solicit Plaintiffs' clients, vendors, advertisers, and/or sponsors and that "eight (8) entities previously sponsoring CLM events and/or advertising with CLM joined CXI's Board of Directors." (Pltfs. Resp. at 14).  Neither these allegations, nor any others in the amended complaint, allege any harm to Plaintiffs' commercial relations.  The mere fact that former sponsors joined a competitor's board of directors does not amount to commercial harm.  Thus, in the absence of any factual allegations to support actual harm to any of Plaintiffs' commercial relations, Plaintiffs have not stated a cause of action for unfair competition.  Accordingly, Defendants' motion to dismiss Plaintiffs' claim of unfair competition is granted, and Count III is dismissed.

[2]    At Count IV, Plaintiffs allege that Xchange tortiously interfered with Plaintiffs' existing contractual relations with their clients, vendors, advertisers, and sponsors.  To allege a viable claim for tortious interference with contractual relations, a plaintiff must allege facts sufficient to plausibly show that:  (1) there was an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract.  *See Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994).  A critical element of the tort is the existence of a contractual relationship between the plaintiff and a third party.  *Id*.; *see also B.T.Z., Inc. v. Grove*, 803 F. Supp. 1019, 1024 (M.D. Pa. 1992).  In addition, a cause of action will not stand unless the defendant committed some act that served to deprive the plaintiff of some benefit to which the plaintiff was entitled by the  contract with the third party.  *Keifer v. Cramer*, 51 A.2d 694, 695 (Pa. 1947).  "[T]he gravamen of this tort is the lost pecuniary benefits following from the [lost] contract . . . ."  *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987).

In the motion to dismiss, Defendants argue that Plaintiffs have failed to allege facts sufficient to show a breach or non-performance by any third party of an existing contract between Plaintiffs and that third party.  In response, Plaintiffs again point to the allegations that Defendants have solicited Plaintiffs' clients, vendors, advertisers, and/or sponsors and that "at least eight (8) separate firms or companies previously sponsoring CLM events and /or advertising with CLM were recruited to join, and did, in fact, join CXI's Board of Directors." (Pltfs. Resp. at 15).  Though Plaintiffs have baldly alleged the existence of non-specific contractual relations with their clients, vendors, advertisers, and/or sponsors, they have not alleged that any of these third parties have refused to perform, or were precluded from partially or completely performing, any contractual duties because of Defendants' actions.  Plaintiffs also have not alleged that they were prevented from meeting their own contractual responsibilities.  In the absence of such allegations, Plaintiffs have not stated a valid claim for tortious interference.  *See Al Hamilton*, 644 A.2d 191 (affirming dismissal of tortious interference claim because plaintiff did not allege the breach or non-performance of an existing contract by a third party); *Pawlowski v. Smorto*, 588 A.2d 36, 40 (Pa. Super.

2

      c.  Count V (aiding and abetting breach of fiduciary duty).[3]  Accordingly, Counts

III, IV, and V of the amended complaint are **DISMISSED**; and

2.  Defendants' motion to partially dismiss is **DENIED** with respect to Count VII

(violation of the Defend Trade Secrets Act).[4]

---

Ct. 1991) (same).  Accordingly, Defendants' motion to dismiss Plaintiffs' claim for tortious interference is granted, and Count IV is dismissed.

[3]     At Count V, Plaintiffs allege that Xchange aided and abetted Posner's breach of fiduciary duties. To allege such a claim, a plaintiff must allege facts sufficient to plausibly show:  (1) a breach of a fiduciary duty owed to another; (2) knowledge of that breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting the breach.  *Reis v. Barley, Snyder, Senft & Cohen*, 667 F. Supp. 2d 471, 492 (E.D. Pa. 2009) (citing *Koken v. Steinberg*, 825 A.2d 723 (Pa. Commw. Ct. 2003), *aff'd*, 426 F. App'x 79, 84 (3d Cir. 2011).  Defendants argue that Plaintiffs have failed to allege facts to show that Xchange provided substantial assistance or encouragement in effecting Posner's breach of fiduciary duty, particularly in light of the fact that Xchange was not even incorporated until after Posner left Plaintiffs' employ.  This Court agrees.

Though Plaintiffs baldly allege in conclusory fashion that Xchange "had the intent to assist and/or encourage Posner" and "provided Posner with substantial assistance and encouragement," the amended complaint contains no facts showing that Xchange actively encouraged and/or assisted Posner's alleged fiduciary breaches.  At most, Plaintiffs have alleged that Xchange "passively acquiesced" to Posner's conduct.  Such allegations are insufficient to support a claim for aiding and abetting.  *See Advanced Fluid Sys., Inc. v. Huber*, 2017 WL 2445303, at *19 (M.D. Pa. June 6, 2017) (dismissing aiding and abetting claim where plaintiff showed nothing more than passive acquiescence by the defendant).

In response to Defendants' motion, Plaintiffs argue that a corporate entity can be liable for wrongful acts occurring before the entity was formed.  Though under limited circumstances, such as under a ratification theory, a corporate entity can be liable for conduct occurring before it was formed, this theory of liability has not been, nor can it be, extended with respect to a claim for aiding and abetting breach of fiduciary duty where the only alleged wrongful conduct was that of the former employee (Posner), and not that of the newly formed entity (Xchange).  Indeed, as noted in the caselaw cited by Plaintiffs, to extend liability under such circumstances to the newly formed corporate entity would "defy the established principle that 'a defendant cannot both 'breach' and 'aid/abet' a breach in the same instance.'"  *Advanced Fluid Systems, Inc.*, 2017 WL 2445303, at *19 (quoting *Synthes v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 678 (E.D. Pa. 2014)).  As Judge Buckwalter found in *Synthes*, and as is equally applicable here: "To accept that [the former employee's] own breaches of fiduciary duty equated to aiding and abetting by [the new corporate entity] itself would merge these two separate causes of action and result in a scenario where every employee's breach of fiduciary duty on behalf of a competitor would give rise to an aiding and abetting cause of action against the competitor who is nothing more than a passive beneficiary."  *Synthes*, 25 F. Supp. 3d at 678.  As such, Plaintiff's argument lacks merit.  Therefore, Defendants' motion to dismiss Plaintiffs' claim of aiding and abetting is granted, and Count V is dismissed.

[4]     At Count VII, Plaintiffs allege that Defendants violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. 1831 *et seq.*, by misappropriating Plaintiffs' trade secret information and using it for unspecified "endeavors."  The DTSA creates a private right of action for the misappropriation of trade secrets.  18

3

It is further **ORDERED** that Defendants shall file an answer to the amended complaint by May 18, 2020.

BY THE COURT:

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

U.S.C. § 1836(b)(1).  The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reasons to know that the trade secret was acquired by improper means; *or* disclosure or use of a trade secret without the express or implied consent" of the owner.  *Id*. §§ 1839(5)(A)-(B) (emphasis added).  Defendants argue that Plaintiffs' DTSA claim fails because Plaintiffs did not plead facts sufficient to plausibly show that Defendants "used" the alleged wrongfully obtained trade secrets. Defendants are mistaken.  The plain language of the statute provides a cause of action for either "acquisition of a trade secret . . . by improper means; *or* disclosure or use of a trade secret" without consent of the owner. As such, Plaintiffs need not allege facts establishing ***both*** the acquisition and the use to assert a viable claim. Notably, Defendants do not argue that Plaintiffs have not alleged facts sufficient at this stage to show acquisition of their trade secrets by improper means.   Indeed, Plaintiffs have clearly alleged such acquisition.  Accordingly, Defendants' motion to dismiss the DTSA claim at Count VII is denied.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE AMERICAN INSTITUTE FOR** | : | **CIVIL ACTION** |
| **CHARTERED CASUALTY** | : | |
| **UNDERWRITERS,** *et al.* | : | **NO. 19-5369** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SYDNEY POSNER,** *et al.* | : | |
| *Defendants* | : | |

**ORDER**

**AND NOW**, this 2nd day of May 2023, upon consideration of Plaintiffs' *motion for an adverse inference of spoliation*, [ECF 236], and the parties' respective oral arguments, it is hereby **ORDERED** that the motion is **GRANTED**, *in part*, as reflected in the Court's instructions to the jury.[1]

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

[1]    After hearing the parties' respective arguments, this Court addressed the underlying motion by way of the jury instructions.

App.5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE AMERICAN INSTITUTE FOR** | : | **CIVIL ACTION** |
| **CHARTERED PROPERTY** | : | |
| **CASUALTY UNDERWRITERS,** | : | **NO. 19-5369** |
| *et al.* | : | |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SYDNEY POSNER,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                          NOVEMBER 6, 2023

## MEMORANDUM OPINION

**INTRODUCTION**

In their operative complaint, Plaintiffs The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes, and The Institutes, LLC, (collectively, "AICPCU") asserted numerous claims against Defendant Sydney Posner ("Posner"), their former employee, and Defendant The Claims Xchange, Inc. ("Xchange"), Posner's current employer, (collectively, "Defendants"), premised primarily on Posner's alleged wrongful taking and use of confidential information belonging to AICPCU.  By Order dated April 27, 2020, this Court dismissed several of AICPCU's claims, leaving only their claims for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and conversion.  [ECF 34].

In response to the operative complaint, Posner asserted counterclaims against AICPCU for, *inter alia*, breach of contract and unpaid wages under the Pennsylvania Wage Payment and Collection Law (the "WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*, premised on her allegations that AICPCU failed to pay her earned commissions after her termination of employment on September 20, 2019.  Following this Court's disposition of the parties' cross-motions for summary judgment,

App.6

this matter went to a jury trial, resulting in a verdict:  (1) in favor of AICPCU on its breach of the confidentiality agreement, and awarding $48,830.45 in "nominal" damages; and (2) in favor of Posner on her breach of contract and WPCL claims in the same amount of $48,830.45.  The jury also found that AICPCU had not met its burden with respect to its other claims.

Before this Court is AICPCU's renewed motion for judgment as a matter of law and/or motion for a new trial or to alter or amend judgment, filed pursuant to Federal Rules of Civil Procedure 50 and 59, [ECF 273], which Posner opposes, [ECF 276].[1]  The issues raised by the parties have been fully briefed and are ripe for disposition.  For the reasons set forth herein, AICPCU's motion is granted *in part* and denied *in part*.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts, evidence and procedural history of this action are well known to the parties and will be recited only to the extent necessary to address the issues raised.  Most relevant to the Court's resolution of the underlying motion, however, is the procedural history surrounding this Court's resolution of AICPCU's motion for summary judgment with respect to Posner's claims for unpaid commissions.

Following the close of discovery, AICPCU filed a motion for summary judgment, in which it sought judgment as to all of Posner's claims for unpaid commissions. [ECF 124].  In that motion, AICPCU proffered its interpretation of the various commission agreements and argued that Posner had failed to present evidence sufficient to show that she had earned the commissions pursuant to the terms of her employment agreement.  In response, Posner proffered her own interpretation of the commission provisions and evidence she maintained showed that she had not been paid earned commissions.  [ECF 130].

---

[1]      This Court has also considered Plaintiff's reply.  [ECF 284].

By Memorandum Opinion dated June 22, 2022, this Court interpreted the parties' written agreement with respect to Posner's commissions and determined, as a matter of law, that the terms specific to Posner's commissions were modified during various stages of her employment. The governing terms of the modifications are summarized as follows:

### *Commission Terms Applicable From Inception of Employment Until September 2018*

From the inception of Posner's employment until September 2018, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. AICPCU was required to pay Posner these commissions only after the sponsor paid for the sponsorship in full, but regardless of whether the event had yet occurred. AICPCU was required to pay Posner for these particular sales at the end of the following periods: January through June; and July through December. In addition, any sales that Posner made for the CLM Annual Conference were to be paid after the sponsor paid for the sponsorship in full and after the CLM Annual Conference occurred.

### *Commission Terms Applicable From September 2018 Until July 1, 2019*

From September 2018 until July 1, 2019, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. AICPCU was required to pay Posner these commissions only after the sponsor paid for the sponsorship, in full, but regardless of whether the event had yet occurred. AICPCU was required to pay Posner for these particular sales quarterly: on January 15, April 15, July 15, and October 15.

### *Commission Terms Applicable From July 1, 2019 Until End of Employment*

From July 1, 2019, until the end of Posner's employment, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. Beginning on July 1, 2019, however, commissions were not earned until a sponsor paid for an event in full ***and*** the event occurred. AICPCU was required to pay Posner for these particular sales in the first payroll of each month.

(*See* Mem. Op., ECF 139, at pp. 13-15). Notably, at each of these three time periods of Posner's employment, Posner was only entitled to a commission if she was still employed by AICPCU when all conditions for payment were satisfied and when the payment was to be paid.

In response to AICPCU's motion for summary judgment and in support of her claims for commissions, Posner provided the evidence that she maintained showed the commissions that she

had earned and that AICPCU had not paid.   Specifically, Posner relied exclusively on her declaration and two attached spreadsheets, Exhibit C and Exhibit D, to meet her summary judgment burden with respect to her unpaid commissions claims.   Based on the Court's above interpretation of the parties' agreement on commissions (and various modifications thereto), this Court held that Posner could only recover:   (1) commissions for sales identified on Exhibit C that were paid in full prior to July 1, 2019; and (2) commissions for sales identified on Exhibit D for events that occurred and were paid in full by August 30, 2019.   (*Id.* at pp. 15-18).

Following the Court's disposition of the parties' cross-motions for summary judgment, this matter proceeded to a jury trial on the parties' respective remaining claims.   Both parties made oral motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(a), which this Court denied.   In its Rule 50 motion, AICPCU argued that:   (1) AICPCU was entitled to judgment as a matter of law on its claims for breach of the confidentiality provision; (2) AICPCU was entitled to judgment as a matter of law on Posner's wage claim because Posner was not a Pennsylvania employee under the statute; (3)  Posner was not entitled to liquidated damages because she had not met her burden of showing that AICPCU had acted in bad faith when failing to pay her earned commissions; (4) AICPCU was entitled to judgment as a matter of law on Posner's breach of contract counterclaim because the commissions she sought were precluded by the Court's previous decision on summary judgment; and (5) Posner had failed to establish that the commissions identified on Trial Exhibit D91A were earned but unpaid.   [ECF 248].

At the conclusion of the trial, the jury returned a verdict:

(1) in favor of AICPCU on its contract claim for breach of the confidentiality provision of the employment agreement—judgment in the "nominal" amount of $48,830.45;

4

App.9

(2) in favor of Posner on AICPCU's claims for breach of the non-solicitation provision of the employment agreement, misappropriation of trade secrets, and breach of the duty of loyalty; and

(3) in favor of Posner on her claims for unpaid commissions—judgment in the amount of $48,830.45.

[ECF 262].

The jury also found that AICPCU was not entitled to punitive damages and that AICPCU had failed to prove by clear and convincing evidence that its failure to pay Posner commissions was done in good faith. [*Id.*].

Following the entry of judgment on the jury's verdict, AICPCU filed the underlying renewed motion for judgment as a matter of law and/or motion for new trial or to alter or amend judgment pursuant to Federal Rules of Civil Procedure 50 and 59, [ECF 273], which Posner has opposed, [ECF 276].

**LEGAL STANDARD**

    **A.  Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure ("Rule") 50 allows a party to seek judgment as a matter of law after the jury's verdict. *See* Fed. R. Civ. P. 50(b). A court may grant this relief if, upon review of the evidence in a light most favorable to the non-movant, the verdict is not supported by legally sufficient evidence as a matter of law. *See Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir. 1970). The court may not weigh evidence, assess credibility, or substitute its judgment of the facts at trial for that of the jury, but it may examine any evidence from which the jury may have determined its verdict and displace it when "the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Fineman v. Armstrong Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).

### B. Motion to Alter or Amend Judgment

Rule 59 permits a party to move to alter or amend judgment within 28 days after judgment is entered. *See* Fed. R. Civ. P. 59(e). Such a resolution may be warranted to "correct a clear error of law or prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotations omitted). A clear error of law exists when, "after reviewing the evidence, [the court is] left with a definite and firm conviction that a mistake has been committed." *See Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Loc. 1594*, 2023 WL 3305170, at *2 (E.D. Pa. May 8, 2023) (quoting *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016)). While Rule 59(e) permits a court to alter or amend a judgment, it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008).

### C. Motion for New Trial

Alternatively, the Court may grant a new trial under Rule 59(a). *See LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 351 (D. Del. 2000), *aff'd*, 13 F. App'x 940 (Fed. Cir. 2001) ("[T]he standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law[.]"). Rule 59(a) provides that the "court may, on motion, grant a new trial on all or some of the issues—and to any party—after a jury trial, for any reason for which a new trial has heretofore been granted at law in federal court." Fed. R. Civ. P. 59(a). "A new trial may be granted when the jury's verdict was tainted by confusion, against the weight of the evidence, or unjust." *Heath v. City of Phila.*, 1997 WL 560606, at *3 (E.D. Pa. Aug. 22, 1997) (quoting *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992)). "A district court may also grant a new trial if it erred on a matter of law, such as an evidentiary ruling." *Id.* (quoting *Klein v. Hollings*, 992 F.2d

6

1285, 1289–90 (3d Cir. 1993)).   Other "common reasons for granting a new trial," include "improper conduct by an attorney . . . [that] unfairly influenced the verdict." *LifeScan, Inc.*,103 F. Supp. 2d at 351.

**DISCUSSION**

   **A.  *Posner's Claims for Unpaid Commissions***

   In its motion, AICPCU essentially seeks a judgment or modified judgment in its favor on Posner's counterclaims for unpaid commissions on the grounds that:  (1) Posner failed to adduce evidence of the commissions that were due and owed to her as of the date of her termination; (2) Posner was not entitled to liquidated damages under the WPCL; and (3) the WPCL is inapplicable to Posner given her status as a resident of Florida.  AICPCU primarily argues that under the standards set forth above, the jury's verdict in favor of Posner on her unpaid commissions claim must be either vacated or modified because it conflicts with this Court's summary judgment opinion.  This Court agrees, *in part*, and for the reasons expressed below, will modify the judgment to be consistent with this Court's summary judgment opinion.

   At trial, Posner testified extensively as to sales she purportedly made for which she was not paid commissions.  As part of her testimony and evidence, Posner introduced two spreadsheets, Trial Exhibits D91A and D91B, which contained information relating to Posner's sponsorship sales.  The information in these two exhibits was extrapolated by Posner from a spreadsheet and other documents produced by AICPCU.  These two exhibits included, *inter alia*, the following information:  the name of the Posner client, the amount of the sponsorship sale, the date the client fully paid, and the date of the event.  The two exhibits tallied Posner's unpaid commissions at $57,149.78.  During closing arguments, however, Posner's counsel expressly requested an award on Posner's unpaid commissions claim in the amount of $48,830.45.

7

As evidenced by the jury's verdict, the jury accepted Posner's testimony with respect to the unpaid commissions.  However, as argued by AICPCU, the amount of the jury's award, $48,830.45, conflicts and cannot be reconciled with this Court's legal interpretation of Posner's commission agreements.

As set forth above, this Court determined, as a matter of law, the terms governing Posner's commission agreements in its summary judgment opinion.  Specifically, this Court determined that Posner was entitled to commissions for:  (1) sponsorships sold and fully paid between September 2018, and July 1, 2019; and (2) sponsorships sold and fully paid between July 1, 2019, and September 1, 2019, for events occurring before September 1, 2019.  This Court has carefully reviewed the sales listed on Trial Exhibits D91A and D91B and determined, as a matter of law, and consistent with this Court's summary judgment opinion, that *only* a subset of the transactions identified on Trial Exhibit D91A meet the terms for commissions as determined in the Court's summary judgment opinion.[2]  The commissions on these sales total $38,399.82.  This Court will enter an Order modifying the judgment accordingly.

---

[2]     The following transactions listed on Trial Exhibit D91A (identified by row number) qualify for commissions:  29, 49, 51, 57, 67, 73, 75, 77, 79, 82, 83, 86, 88, 90, 92, 93, 94, 97, 1000, 102, 103, 124, 125, 40, 141, 147, 149, 156, 165, 182, 188, 193, 203, 215, 217, 218, 223, 224, 225, 231, 232, 236, 238, 241, 242, 245, 248, 249, 252, 255, 256, 258, 263, 264, 273, 275, 276, 278, 321, 335, 337, 348, 60, 366, 371, 372, 384, 396, 397, 403, 421, 422, 426, 431, 441, 443, 449, 536, 544, 547, 550, 555, 556, 558, 559, 560, 561, 563, 564, 565, 566, 567, 569, 570, 571, 573, 574, 576, 577, 578, 579, 580, 581, 582, 584, 586, 587, 588, 589, 590, 591, 592, 594, 595, 596, 597, 599, 687, 695, 696, 700, 718, 723, 724, 725, 726, 729, 731, 738, 741, 743, 744, 749, 750, 752, 757, 764, 769, 770, 771, 780, 781, 796, 802, and 821.  Each of these transactions involved a sponsorship sale that was fully paid before July 1, 2019, or a sponsorship sale that was fully paid before September 1, 2019, for an event that occurred before September 1, 2019.

None of the transactions listed on Trial Exhibit D91B qualify for commissions because they all involved sponsorship sales that were governed by the July 1, 2019 commission payout modification for events that did not occur until September 2019.  Commissions on these sales were not owed until the first payroll in October 2019, a point in time when Posner was no longer employed by AICPCU.

8

### B. *Liquidated Damages*

AICPCU challenges the award of liquidated damages on Posner's unpaid commissions claim, arguing that: (1) Posner was not a covered employee under the Pennsylvania Wage Payment Collection Law; (2) the verdict in favor of AICPCU on its own claim for breach of the confidentiality provision establishes its right to a set-off such that it could not have acted without good faith as required for an award of liquidated damages under the statute; and (3) the jury's finding that AICPCU failed to prove by clear and convincing evidence that their failure to pay Posner commissions was done in good faith lacked evidentiary support. Each of these challenges to the liquidated damages award is without merit and will be addressed separately.

AICPCU argues, as it did during the jury instruction charging conference, that Posner is not a covered employee under the WPCL and, thus, is not entitled to an award of liquidated damages. For the reasons stated during the charging conference, this argument was and continues to be rejected. Specifically, it is undisputed that Posner's employment agreement contained a Pennsylvania choice-of-law provision. As such, Posner is entitled to the protections provided by the WPCL. *See McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 629 (E.D. Pa. 2009) (collecting cases holding that WPCL applies to out-of-state employee where employment agreement contained a Pennsylvania choice-of-law and/or venue provision); *Carlson v. Qualtek Wireless LLC*, 2022 WL 3229399, at *15, n.147 (E.D. Pa. Aug. 10, 2022); *Morgan v. Arion Cap. Mgmt., LLC*, 2022 WL 2805329, at *5 (E.D. Pa. July 15, 2022).

AICPCU also argues that the verdict in favor of AICPCU on one of its own claims establishes its right to a set-off such that it could not have acted without good faith as required for liquidated damages under the statute. Though AICPCU asserted set-off as an affirmative defense in its answer to Posner's counterclaims, AICPCU never argued that its set-off affirmative defense

constituted good faith under the WPCL prior to raising this argument now in its underlying motion. Indeed, AICPCU has maintained throughout this litigation that it did not owe Posner any commissions. As such, AICPCU's set-off/good faith argument was waived. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) (finding argument raised in a renewed post-trial Rule 50 motion not raised in original Rule 50 motion waived); *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 574 (Pa. Super. Ct. 2006) ("[I]f an employer withholds wages based on a dispute with the employee that would result in a set-off, the employer's reliance on the set-off must be held in good-faith. Otherwise, the employee is entitled to additional, liquidated damages . . . .").

Finally, AICPCU argues that the evidence at trial demonstrated as a matter of law that it acted in good faith. In support of this argument, AICPCU relies on trial evidence that it argues shows that it paid Posner commissions during the course of her employment pursuant to established practice. However, as this Court previously determined, the parties' purported "established practice" was contrary to the terms of the parties' written commissions agreement. In addition, the parties introduced evidence showing that AICPCU retroactively modified the terms of the commission payout structure less than two months before it terminated Posner's employment. Further, Posner put on evidence showing her attempts to resolve the commission issues before and after AICPCU commenced this litigation. In light of this conflicting evidence, there is no basis for this Court to overturn the jury's findings on the good faith issue, an issue reserved for the factfinder. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 565 (3d Cir. 2001) ("Under Pennsylvania law, whether a party has made a good-faith effort is a question of fact."); *Kairys v. S. Pines Trucking, Inc.*, 2021 WL 2073797, at *14 (W.D. Pa. May 24, 2021) (reserving issue of bad faith for wage claim for jury); *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 564, 574 (Pa.

10

Super. Ct. 2006) (holding in wage claim case that "the issue of good faith was properly a question for the jury").

### C. Breach of Non-Solicitation Provision

AICPCU argues that the jury's verdict should be vacated in favor of Posner on AICPCU's breach of the non-solicitation provision claim because it is against the weight of the evidence. However, AICPCU did not raise any issues with respect to its claim for breach of the non-solicitation provision in its Rule 50(a) motion at the close of Posner's case. As such, the argument is waived. *See Kars 4 Kids Inc.*, 8 F.4th at 220.

### D. New Trial Based Upon the Introduction of Prejudicial Evidence

AICPCU also argues that it should be given a new trial because of the introduction, by Posner's counsel, of various irrelevant and highly prejudicial evidence at trial that AICPCU now contends unfairly appealed to the sympathy of the jury. Specifically, AICPCU points to Posner's introduction of evidence that she was a single mother with limited financial means (as compared to a large corporation) and "thinly veiled references to Posner's discrimination lawsuit." This Court disagrees.

"[T]he trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (internal quotations omitted). Improper remarks "engender sufficient prejudice to mandate the granting of a new trial" where they "have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Id.*

Notably, AICPCU raised its concerns about the introduction of Posner's status as a single mother in a motion *in limine*. This Court denied that motion after concluding that such status would not unfairly prejudice AICPC with respect to its claims and defenses. [*See* ECF 218].

AICPCU has provided no evidence from which this Court could conclude that the introduction of Posner's status as a single mother in comparison to AICPCU's corporate status had any influence on the verdict. Moreover, while giving the jury instructions, this Court advised the jurors multiple times that sympathy has no role in their deliberations. Jurors are presumed to follow a trial court's instructions, *see Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019), and AICPCU has presented no evidence to reasonably conclude that the jury did not do so here.

AICPCU also raised its concerns with respect to the introduction of evidence referring to Posner's unrelated employment discrimination claims in a motion *in limine*. This Court granted that motion, precluding the introduction of any evidence of Posner's discrimination claims. [ECF 237]. Importantly, and consistent with this Court's prior ruling, the fact that Posner has a pending lawsuit for employment discrimination against AICPCU was never mentioned during trial, nor did Posner testify that she believed she had been discriminated against during her employment. In the absence of any such reference to Posner's other lawsuit, AICPCU has not met its burden of showing a reasonable probability that the verdict was influenced by any such references during trial.

**CONCLUSION**

For the reasons set forth, this Court finds that the jury's verdict on Posner's counterclaims for unpaid commissions was legally inconsistent with this Court's interpretation of the commission agreements in the Court's summary judgment opinion and, thus, must be modified pursuant to Rule 59. Plaintiffs' remaining arguments for relief under Rules 50 and 59 are denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

12

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE AMERICAN INSTITUTE FOR | : | CIVIL ACTION |
| CHARTERED CASUALTY | : | |
| UNDERWRITERS, *et al.* | : | NO. 19-5369 |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| SYDNEY POSNER, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 6th day of November 2023, upon consideration of Plaintiffs' *renewed motion for judgment as a matter of law and/or motion for new trial or to alter or amend judgment*, [ECF 273], Defendants' response in opposition, [ECF 276], and Plaintiffs' reply, [ECF 284], it is hereby **ORDERED** that, for the reasons set forth in the accompanying Memorandum Opinion, the motion is **GRANTED**, *in part*, and **DENIED**, *in part*. Accordingly, the judgment will be modified by separate Judgment Order consistent with the reasons set forth in the Memorandum Opinion.

BY THE COURT:

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE AMERICAN INSTITUTE FOR | : | CIVIL ACTION |
| CHARTERED CASUALTY | : | |
| UNDERWRITERS, *et al.* | : | NO. 19-5369 |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| SYDNEY POSNER, *et al.* | : | |
| *Defendants* | : | |

**ORDER**

**AND NOW**, this 14th day of December 2023, upon consideration of Plaintiffs' *motion for entry of a final injunction*, (ECF 266), Defendants' response in opposition, (ECF 272), and Plaintiffs' reply, (ECF 280), it is hereby **ORDERED** that the motion is **DENIED**.[1]

---

[1]  In this action, Plaintiffs The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes and The Institutes, LLC (collectively, "AICPCU"), asserted numerous claims against Defendant Sydney Posner ("Posner"), their former employee, and against Defendant The Claims Xchange, Inc. ("Xchange"), Posner's subsequent employer (collectively, "Defendants"), premised primarily on Posner's alleged wrongful taking and use of confidential information belonging to AICPCU. Following the close of discovery and this Court's resolution of the parties' cross-motions for summary judgment, this matter went to a jury trial. The jury returned a verdict in favor of AICPCU on its breach of the confidentiality agreement and conversion of confidential information claims and awarded AICPCU $48,330.45. (ECF 262). Notably, the jury found against AICPCU on its breach of the non-solicitation provision claim.

By way of the underlying motion, AICPCU seeks the entry of a final injunction that effectively prohibits Defendants from, *inter alia*, competing with AICPCU for a period of three years, as an additional remedy. In deciding whether to grant a permanent injunction, this court must consider whether:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). To support its request for injunctive relief, AICPCU argues that it has suffered irreparable harm as a result of Defendants' breach of the confidentiality agreement and conversion of AICPCU's confidential information. In response, Defendants argue that AICPCU's request for injunctive relief must be denied because (1) AICPCU put on evidence at trial as to

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

the actual damages it suffered as a result of Defendants' breach and conversion of AICPCU's confidential information (including a damages expert), the jury credited that evidence, and awarded AICPCU $48,330.45 in compensatory damages, and (2) AICPCU has failed to present evidence to show that it will suffer irreparable injury in the absence of an injunction.

At trial, AICPCU proffered the expert testimony of Jeffrey Scheidt on the issue of compensatory damages.  Mr. Scheidt testified at length that the value of AICPCU's confidential and trade secret information equated to $8,000,000 and that Posner was in possession of AICPCU's confidential information valued between $600,000 and $800,000.  Though the jury apparently did not credit Mr. Scheidt's precise valuation, the jury awarded AICPCU $48,330.45 in non-duplicative damages on AICPCU's breach of the confidentiality agreement and conversion of confidential information claims.  In light of AICPCU's evidence, the arguments presented at trial, and the jury's verdict and award of compensatory damages, this Court finds that AICPCU has not met its burden of showing irreparable injury.  Accordingly, AICPCU's motion is denied.

App.20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE AMERICAN INSTITUTE FOR** | : | **CIVIL ACTION** |
| **CHARTERED CASUALTY** | : | |
| **UNDERWRITERS,** *et al.* | : | **NO. 19-5369** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SYDNEY POSNER,** *et al.* | : | |
| *Defendants* | : | |

## MODIFIED CIVIL JUDGMENT

**AND NOW**, this 15th day of December 2023, in accordance with the unanimous jury verdict by interrogatory rendered on May 2, 2023, and this Court's resolution of Plaintiffs' post-trial motions, (ECF 285-287), it is hereby **ORDERED** that **JUDGMENT** is entered in favor of Plaintiffs The American Institute for Chartered Casualty Underwriters, d/b/a The Institutes, and The Institutes LLC (collectively, "The Institutes"), and against Defendant Sydney Posner in the amount of $48,830.45 for nominal damages.

It is further **ORDERED** that **JUDGMENT** is entered in favor Counterclaim Plaintiff Sydney Posner and against Counterclaim Defendants The Institutes in the amount of $38,399.82 for compensatory damages and $9,599.96 for liquidated damages.

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

App.21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes** *and* **The Institutes LLC,** | : <br> : <br> : <br> : Docket No. 2:19-cv-05369-NIQA <br> : |
| Plaintiffs, | : JURY TRIAL DEMANDED <br> : |
| v. | : <br> : |
| **Sydney Posner** *and* **The Claims Xchange, Inc.**, | : <br> : <br> : |
| Defendants. | : |

**NOTICE OF APPEAL OF PLAINTIFFS, THE AMERICAN**
**INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS**
**AND THE INSTITUTES, LLC**

Notice is hereby given that Plaintiffs/Counterclaim Defendants, The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, hereby appeal to the United States Court of Appeals for the Third Circuit from the Modified Amended Final Judgment entered upon a jury verdict on December 18, 2023 [D.I. 288], and all prior orders and rulings merged into that judgment.

Dated: December 21, 2023

Respectfully submitted,

COZEN O'CONNOR

By:  */s/ Robert W. Hayes*
Robert W. Hayes (PA ID 33099)
Arianna K. McLaughlin (PA ID 328142)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
T. 215-665-2094
F. 215-665-2013
rhayes@cozen.com

## **CERTIFICATE OF SERVICE**

I, Robert W. Hayes, counsel for Plaintiffs/Counterclaim Defendants, The American Institute for Chartered Property Casualty Underwriters and The Institutes, LLC, certify that the foregoing Notice of Appeal was filed through the Electronic Filing System which provided copies to counsel for defendants, Sydney Posner and Claims Xchange, Inc,. Catherine Barbieri and Andrew Elser.

_____/s/ Robert W. Hayes_____
ROBERT W. HAYES